**KENTUCKY BAR ASSOCIATION, Movant,**

v.

**Joseph F. BAMBERGER, Respondent.**

**No. 2011–SC–000378–KB.**

Supreme Court of Kentucky.

Oct. 27, 2011.

## OPINION AND ORDER

The Board of Governors of the Kentucky Bar Association (KBA) has recommended to this Court that Respondent, Joseph F. Bamberger, KBA Member No. 03045, be permanently disbarred as a result of his violations of the Rules of Professional Conduct. Respondent was admitted to the practice of law in Kentucky in 1970. His last known roster address is 1598 Shady Cove, Florence, Kentucky, 41042.

The Inquiry Commission charged Respondent with three counts of misconduct. Following an evidentiary hearing, the trial commissioner issued a report finding Respondent guilty of two of the three charges and recommending that he be permanently disbarred. Pursuant to SCR 3.370(6),[1] the Board of Governors unanimously adopted the Trial Commissioner's findings and recommendation. The Board now recommends that this Court find Respondent guilty and permanently disbar him. After reviewing the record, we adopt the Board's recommendation.

Respondent was a circuit court judge in Boone and Gallatin counties from 1992

---

1. SCR 3.370(6) provides in pertinent part:
 The Board shall decide, by a roll call vote, whether the decision of the Trial Commissioner as to the finding of a violation and degree of discipline imposed is supported by substantial evidence or is clearly erroneous as a matter of law. The Board, in its discretion, may conduct a review *de novo* of the evidence presented to the Trial Commissioner. Both the findings and any disciplinary action must be agreed upon by eleven (11) or three-fourths (3/4) of the members of the Board present and voting on the proceedings, whichever is less.

through his retirement in January 2004.[2] The charges against him stem from his actions as presiding judge in the case of *Darla Guard, et al., or Jonetta Moore, et al. v. A.H. Robins Company, et al.* (hereinafter the Fen–Phen case).

The Fen–Phen case was a class action lawsuit filed in 1998 in Boone Circuit Court against American Home Products (AHP), the manufacturer of the prescription diet drug Fen–Phen. The plaintiffs, who alleged that they were injured through their use of Fen–Phen, were represented by attorneys William J. Gallion, Shirley A. Cunningham, Jr., Melbourne Mills, Jr., Richard D. Lawrence, Stanley Chesley, and David L. Helmers. At the outset of the representation, the attorneys and plaintiffs entered into contingency fee contracts, which provided that the attorneys would receive fees equal to thirty or thirty-three percent of any recovery.

In May 2001, the plaintiffs' attorneys and AHP's counsel settled the Fen–Phen case for a total lump-sum payment of $200,000,000.00. Under the terms of the settlement agreement, the plaintiffs' attorneys were responsible for dividing the settlement funds among the 440 plaintiffs and deducting their attorneys' fees. Despite the terms of their contingency fee contracts, the plaintiffs' attorneys and their agents retained $126,255,422.87, more than sixty-three percent of the settlement funds. The plaintiffs' attorneys also retained an additional $20,000,000.00 in "excess funds." They distributed only $74,194,577.13 to the plaintiffs, who were never informed of the total amount of the settlement or the amount of fees retained by their attorneys.

Following the settlement of the Fen–Phen case, the KBA began a disciplinary investigation into the conduct of the plaintiffs' attorneys.[3] In an effort to establish that their conduct was proper, the plaintiffs' attorneys secretly sought court approval of their fees from Respondent. On the evening of February 6, 2002, Respondent held an off-the-record meeting in the jury room at the Boone County Courthouse with plaintiffs' attorneys Mills, Gallion, and Chesley, and their trial consultant, Mark Modlin. AHP's counsel was not present or advised of this meeting.

As a result of his ex parte meeting with the plaintiffs' attorneys, Respondent signed an order finding that the attorneys' fees and expenses paid in the Fen–Phen case were "reasonable and necessary." Respondent admits that this order, which did not set forth the actual amount of attorneys' fees awarded, contains numerous false statements. The order incorrectly indicates, among other things, that Respondent was aware of the terms of the settlement agreement, had reviewed an accounting of the funds allocated to the plaintiffs and their attorneys, and had determined that the funds had been handled properly and in accordance with the agreement. However, at the time he signed the order, Respondent acknowledges that he had not read the settlement agreement or reviewed any accounting.[4] His decision to

---

**2.** After retiring, the Respondent served as a Senior Status Special Judge until he resigned on February 24, 2006.

**3.** Several of the plaintiffs' attorneys in the Fen–Phen case have been permanently disbarred based on their dishonest and fraudulent actions. *See Cunningham v. Kentucky Bar Association,* 266 S.W.3d 808 (Ky.2008); *Gallion v. Kentucky Bar Association,* 266

S.W.3d 802 (Ky.2008); *Kentucky Bar Association v. Mills,* 318 S.W.3d 89 (Ky.2010).

**4.** Respondent subsequently signed three additional orders approving the attorneys' fees as reasonable and falsely indicating that he had reviewed an accounting of the settlement funds.

approve the attorneys' fees was based solely on his ex parte discussion with the plaintiffs' attorneys and Modlin.[5]

Respondent signed the order approving the plaintiffs' attorneys' fees in February 2002; however, the order was not entered into the court record for nearly four months. Once the order was entered, Respondent instructed the Circuit Court Clerk to provide copies of all future orders solely to the plaintiffs' attorneys. The Clerk was further ordered to seal all future orders entered by the court in the Fen–Phen case. AHP's counsel was not provided with copies of any of these orders.

After sealing the court record, Respondent entered orders authorizing the plaintiffs' attorneys to establish a charitable entity with the $20,000,000.00 they had retained as "excess funds." From June 2002 through December 2003, Respondent entered a series of orders which led to the establishment of a non-profit corporation, the Kentucky Fund for Healthy Living (KFHL). Despite statements in the orders to the contrary, the plaintiff class never consented to the creation of KFHL with the settlement funds.

In his orders regarding KFHL, Respondent expressly retained the court's authority to approve any changes in the corporation's directors. In January 2003, Respondent appointed Modlin, Cunningham, Gallion, and Mills as the initial directors of KFHL. As a result of this appointment, Modlin received $7,500 per month and the plaintiffs' attorneys received $5,350.00 per month in director's fees from KFHL.

Immediately prior to his retirement from the bench, Respondent entered an order relinquishing the court's continuing authority over KFHL. The order implies that KFHL had fulfilled its charitable purpose and that oversight was no longer necessary. However, in reality, KFHL had never made any distributions for charitable purposes. Following his retirement and termination of judicial oversight, Respondent accepted the plaintiffs' attorneys' invitation to become a paid director of KFHL. Respondent received $5,350.00 per month, and a total of sum of $.48,150.00 from KFHL.[6]

 Based on the acts detailed above, the Board of Governors, found that Respondent violated two of our Rules of Professional Conduct.[7] The charges against Respondent are as follows:

(1) Respondent violated SCR 3.130–8.3(a), which prohibits a lawyer from violating the Rules of Professional Conduct or knowingly assisting another attorney in doing so.

**5.** Modlin, who had been a close personal friend of Respondent since 1985, received a $2,000,000.00 fee from the plaintiffs' attorneys for his work in the Fen–Phen case. He acknowledged that the fee was more than twice that which he had received in any other case.

**6.** Respondent returned his director's fees after the Judicial Conduct Commission (JCC) initiated an investigation into his conduct. The JCC ultimately commenced disciplinary proceedings against Respondent, resulting in a public reprimand, which was the most severe sanction the JCC could impose because

Respondent resigned from his position as Senior Status Special Judge.

**7.** The third charge brought against Respondent was that he violated SCR 3.130–5.5(b) by assisting Modlin, a non-lawyer, in activity that constitutes the unauthorized practice of law. Following the hearing before the Trial Commissioner, the KBA admitted that there was not sufficient evidence to find that Respondent violated this rule. The Trial Commissioner agreed and found that Respondent had not violated SCR 3.130–5.5(b). The Board of Governors adopted the Trial Commissioner's findings.

The Board of Governors found that Respondent violated this Rule by knowingly assisting the plaintiffs' attorneys in defrauding their clients. The Board concluded that Respondent's conduct—entering of numerous orders containing false statements of fact, conducting secret proceedings, sealing the court record, failing to review any documentation of the allocation of settlement funds, and personally benefitting from the fraud—supported a finding of guilt on this charge.

(2) Respondent violated SCR 3.130–8.3(c), which prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. The Board of Governors found that Respondent violated this Rule by entering numerous orders containing false statements of fact. The Board determined that Respondent's admission that he knowingly entered orders containing false statements of fact under suspicious circumstances supported a finding of guilt on this charge.

Upon a review of the record, we agree with the Board of Governors' findings and adopt their recommendation to permanently disbar Respondent in light of the highly egregious nature of his ethical violations. Respondent's conduct shocks the Court's conscience.

ACCORDINGLY, IT IS HEREBY ORDERED that:

(1) Respondent, Joseph F. Bamberger, is found guilty of violating SCR 3.130–8.3(a) and SCR 3.130–8.3(c);

(2) For these violations, Bamberger is hereby permanently disbarred from the Kentucky Bar Association. Bamberger may never apply for reinstatement to the Bar under the current rules;

(3) Pursuant to SCR 3.390, Bamberger shall, within ten days from the entry of this Opinion and Order, notify all clients with Kentucky cases in writing of his inability to represent them, and notify all courts in which he has matters pending of his disbarment from the practice of law, and furnish copies of said letters of notice to the Director of the KBA. Furthermore, to the extent possible and necessary, Bamberger shall immediately cancel and cease any advertising activities in which he is engaged; and

(4) In accordance with SCR 3.450, Bamberger is directed to pay all costs associated with these disciplinary proceedings in the amount of $18,700.84, for which execution may issue from this Court upon finality of this Order.

ABRAMSON, CUNNINGHAM, NOBLE, SCOTT, and VENTERS, JJ., concur. SCHRODER, J., not sitting.

ENTERED: October 27, 2011.

/s/ John D. Minton, Jr.
 CHIEF JUSTICE