**William J. GALLION, Movant,**

v.

**KENTUCKY BAR ASSOCIATION, Respondent.**

No. 2008–SC–000629–KB.

Supreme Court of Kentucky.

Oct. 23, 2008.

## OPINION AND ORDER

The Movant, William J. Gallion, KBA Member Number 24167, 163 East Main Street, Suite 401, Lexington, Kentucky 40507, moves this Court to withdraw his membership to the Kentucky Bar under terms of permanent disbarment. Pursuant to SCR 3.480, Movant admits that his conduct in the case, *Darla Guard, et al. or Jonetta Moore, et al. v. A.H. Robins Company, et al.*[1] (hereinafter the Fen–Phen case), violated certain Supreme Court Rules as charged in KBA File 9340. For the reasons set forth herein, we grant Movant's motion.

The charges against Movant stem from a class action lawsuit filed against American Home Products (AHP) in the Boone Circuit Court in July 1998, on behalf of several plaintiffs who claimed to have been injured by AHP's diet drug, Fen–Phen. All of the plaintiffs Movant represented entered into contingency fee contracts with him. A settlement agreement was reached in May 2001 resulting in one lump sum payment to be divided among all plaintiffs. The agreement also provided that a portion of the settlement would be paid to Movant and two other attorneys, Melbourne Mills, Jr. and Shirley A. Cunningham, Jr., who were affiliated with the case. The agreement allowed Movant, Mills, and Cunningham to divide the settlement amount between plaintiffs at their discretion and also determine how much they personally were to be paid. The total amount of settlement funds to be distributed was $200,450,000.

A staff member working with Movant, Mills, or Cunningham contacted each of the plaintiffs and informed them how much settlement money he would receive. The plaintiffs were never informed that their lawyers actually determined the amount of money they were to be given. If a plaintiff complained about the settlement amount, he was coerced by the attorneys or their staff to take the amount offered under the guise that it was what AHP had specifically offered them. Each plaintiff signed a confidentiality agreement and some plaintiffs were even told that they could go to jail if they discussed the terms of their individual settlement. At no point were the plaintiffs told about the total settlement arrangement from AHP. No plaintiff received a notice of the settlement process, the manner in which their settlement amounts were decided upon, or their right to opt out of the settlement and proceed to trial. Additionally, Movant previously entered into an agreement with attorneys Stanley Chesley, David Helmers, and Richard Lawrence to share attorney fees received from the case. The plaintiffs were never informed of this fee-splitting arrangement.

1. Boone Circuit Court, Case Number 98–CI–795

In June 2002, nearly $70 million of the settlement funds had not been distributed. The money was improperly deposited in the personal accounts of the attorneys. An order was entered by Judge Bamberger of the Boone Circuit Court to give fifty percent of the remaining funds to the plaintiffs, and fifty percent to Movant, Mills, Cunningham and several other attorneys for "indemnification or contingent liabilities." The record shows that there were no "contingent liabilities."

In July 2002 another order was issued by the Boone Circuit Court. This divided any remaining funds between the attorneys for "outstanding litigation and administrative expenses" and a charitable organization which was to be created. No statement exists showing what outstanding litigation or administrative expenses existed at that time. The July 2002 order implied that all plaintiffs had consented to the creation of the charity. However, the record clearly shows that the plaintiffs did not knowingly consent to the creation of a non-profit charity like the one being proposed.

In January 2003, The Kentucky Fund for Healthy Living, Inc., was registered with the Secretary of State as a 501(c)(3) corporation. Movant, Mills, and Cunningham transferred $20 million of the remaining settlement from their own personal accounts in order to fund the entity. Movant was paid a salary for serving as one of the charity's board members.

In total, the attorneys received approximately $104,337,000 from the total settlement. Movant and his firm received fees in excess of $56 million.

From these acts, Movant is charged with twenty-two violations of our Supreme Court Rules. These charges are:

1) The Movant violated SCR 3.130–1.4(a) by failing to adequately communicate with the plaintiffs that he represented in the Fen–Phen case;

2) The Movant violated SCR 3.130–1.4(b) by failing to inform his clients in the Fen–Phen case of relevant information, including but not limited to: the failure to communicate the amount of the total settlement from AHP to his clients; the failure to explain to his clients the process for determining the amount that each of the plaintiffs would receive; the failure to inform his clients of the options available in the event that the settlement amount for that individual client was rejected by the client; and by instructing or allowing others to give his clients inaccurate information about multiple aspects of the case;

3) The Movant violated SCR 3.130–1.5(a) by receiving an excessive fee in the Fen–Phen case, by receiving both a contingency fee from each of his clients who were plaintiffs in the lawsuit and additional fees from the total settlement proceeds;

4) The Movant violated SCR 3.130–1.5(c) by failing to provide his clients with a written statement explaining the outcome of the matter, by failing to provide each of his clients with an accounting stating how the client's settlement, the attorney fee, and reimbursement for costs were calculated, and by providing incorrect information as to the method of determination of the client's portion of the statement;

5) The Movant violated SCR 3.130–1.5(e) by failing to disclose to his clients that he divided fees with Mills, Cunningham, Chesley, Helmers, and Lawrence; by dividing fees with the other lawyers, not in proportion to the services performed, nor pursuant to a proper agreement, and by failing to gain the approval of his clients for splitting fees with other attorneys not in his law firm; and be-

cause the totality of the fees paid to the Movant, Cunningham, Mills, Chesley, Helmers, and Lawrence was unreasonable;

6) The Movant violated SCR 3.130–1.7(a) when in representing multiple clients who were competing for the same settlement funds he failed to explain the ramifications of the multiple client representation to his clients, and by failing to obtain his clients' consent in the multiple representation and division of the settlement funds;

7) The Movant violated SCR 3.130–1.7(b) by accepting a lump sum settlement from AHP, assisting in allocating less than one-half of the settlement funds to the clients, and then receiving an excessive fee for himself and those under his control from the remainder of the settlement proceeds. This method of determining the individual settlement amounts of his clients while having a stake in retaining a large amount of the settlement funds for his own attorney fees or contractual obligations of fee-splitting with non-lawyers and other lawyers, violates SCR 3.130–1.7(b). In addition, the Movant failed to obtain consent of multiple clients in a single matter or to include any explanation of the implications of such an arrangement in the division of the money;

8) The Movant violated SCR 3.130–1.8(a) by acquiring an interest in the settlement funds beyond his written fee agreement. The Movant's interest in the settlement funds was created when he accepted a lump sum settlement to be divided between his clients, the other plaintiffs, the other attorneys, and the lay persons with whom he would split fees, in order to receive a fee in excess of the amount stated in the contingency fee contracts with his clients;

9) The Movant violated SCR 3.130–1.8(g) as referenced above, including but not limited to, his actions: in failing to explain to his clients that AHP made a lump sum settlement to all of the plaintiffs and the total amount thereof; in failing to explain that the settlement agreement stated that the plaintiffs' attorneys would determine the amount that each plaintiff would receive from the lump sum settlement; in failing to disclose or explain the proposed allocations in the settlement agreement; in failing to communicate the amount of the total settlement from AHP to his clients and to the plaintiffs in the overall lawsuit; in failing to consult with his clients at all; and in failing to obtain the consent of his clients to make an aggregate settlement;

10) The Movant violated SCR 3.130–1.8(j) by acquiring a proprietary interest in the litigation. The Movant's interest in the litigation was created when he accepted a lump sum settlement to be divided between his clients, the other plaintiffs, the attorneys, and the lay persons with whom he had agreed to split fees, all with the knowledge that he would receive a fee in excess of the amount stated in the contingency fee contracts with his clients;

11) The Movant violated SCR 3.130–1.15(a) by co-mingling his property with that of his clients, by using those funds for personal use, by participating in transfers of money from the escrow account to purchase automobiles for his employees; and by moving, or participating in moving, funds belonging to clients out of the state;

12) The Movant violated SCR 3.130–1.15(b) by failing to turn over to the clients the funds to which they were entitled, and by failing to provide an accurate accounting of the distribution of the total settlement received from

AHP as well as the individual clients' settlement distribution;

13) The Movant violated SCR 3.130–1.15(c) by removing funds that did not belong to the Respondent, re-depositing the funds in a personal account, and later transferring personal funds back to the original account to cover second client distributions, and initially, upon receipt of the funds, by failing to make the proper accounting to his client before withdrawing funds for himself;

14) The Movant violated SCR 3.130–2.1 by failing to exercise independent professional judgment in distributing the lump sum settlement from AHP or by failing to render any candid advice to his clients during the representation, including whether to accept the proposal the attorneys made;

15) The Movant violated SCR 3.130–5.1 by making insufficient efforts to supervise his associate, David Helmers, and permitting his associate to violate the Rules of Professional Conduct, as well as directing and ratifying the conduct of David Helmers in misleading and deceiving the clients in connection with the acceptance of the settlement amounts which had been arrived at by the Movant and co-counsel, rather than in an arms length negotiation;

16) The Movant violated SCR 3.130–5.3(a) by failing to have in effect policies and procedures to ensure that his non-lawyer employees were acting in accordance with the lawyer's ethical duties in their dealings with the clients and discussions about settlement matters;

17) The Movant violated SCR 3.130–5.3(b) by failing to appropriately supervise his non-lawyer employees in order to ensure that their conduct was compatible with his ethical duties in their dealings with the clients and discussions about settlement matters;

18) The Movant violated SCR 3.130–5.4(a) by paying a percentage of legal fees to non-lawyers, including but not limited to a trial consultant and a mediator;

19) The Movant violated SCR 3.130–5.5(b) by assisting and permitting non-lawyers in his employ and that of the other counsel to give legal advice to his clients with regard to their litigation and the acceptance of proposed settlements;

20) The Movant violated SCR 3.130–8.3(a) by violating the Rules of Professional Conduct and by knowingly assisting the other plaintiffs' lawyers, non-lawyers working for the plaintiffs' lawyers, and the Boone Circuit Judge to violate the Rules of Professional Conduct;

21) The Movant violated SCR 3.130–8.3(c) as described above, including, but not limited to, his actions: in deceiving his clients into accepting the individual settlement amounts; in deceiving clients about their claims even after demand for more specific accounting; in misrepresenting to the Boone Circuit Court that his clients had agreed to donate a substantial portion of the total settlement received from AHP to charity; in failing to inform the Boone Circuit Court that he had contingent fee contracts with all of his clients which set a specific fee; and in providing, or assisting in providing, false or misleading information to the Boone Circuit Court about the fees and expenses, as well as the manner in which the settlement had been reached by each of his clients, and in misappropriating funds over and above his fee contracts;

22) The Movant violated SCR 3.130–3.3(a)(1) by advising the Boone Circuit Court that his clients had agreed to donate millions of dollars to a charitable organization, when in fact some of the

Respondent's clients were not informed of the possibility that a portion of the settlement proceeds may be donated to charity, some clients were informed that a nominal amount may be donated to charity, and others objected to the donation of any amount of the settlement to charity. Further, the Movant advised, or participated in advising, the Boone Circuit Court of false statements of fact relative to the method of dividing the settlement among the client and the lawyers, and the application of the fee contracts to that division.

The Movant now moves to withdraw his membership from the Kentucky Bar and to terminate the disciplinary proceedings against him. Movant admits that "his conduct violated certain Rules of the Kentucky Supreme Court as charged by the Inquiry Commission." In particular he admits that:

1) he did not tell his clients in writing that he had made fee arrangements with other attorneys; 2) he did not advise his clients concerning the mediation of their case, or provide them an opportunity to be present at the mediation or present input as to the value of their specific case; 3) he did not advise his clients of the total settlement amount and did not comply with the requirements of SCR 3.130–1.8(g); 4) he did not advise his clients that he was seeking fees that were more than the contingent fees provided in his contingent fee contracts; 5) he did not comply with the requirements of SCR 3.130–1.15 to "hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property . . . in a separate account maintained in the state where the lawyer's office is situated . . ."; 6) he did not disclose to the clients that he intended to request that the Judge consider placing approximately $20,000,000 of the settlement funds into the Kentucky Fund for Healthy Living, Inc., or obtain their consent to that distribution; 7) he participated as a paid director of that Fund without client consent; and, 8) he did not disclose to his clients that their individual settlement amounts were being determined by a settlement protocol developed and administered by their own lawyers, not by the Defendant.

The KBA strongly urges this Court to sustain the motion and disbar Movant. In light of the seriousness of the charges against Movant and his admission of guilt, we grant Movant's motion.

Thus, it is ORDERED that:

1) Movant, William J. Gallion's motion to withdraw his membership in the Kentucky Bar Association under terms of permanent disbarment is granted. Movant thusly, may never apply for reinstatement to the Bar under the current rules;

2) Movant in accordance with SCR 3.390, shall notify all Courts in which he has matters pending and all clients for whom he is actively involved in litigation and similar matters, of his inability to continue representation;

3) Movant shall immediately cancel and cease any advertising activities in accordance with SCR 3.390;

4) All current bar disciplinary proceedings against Movant are hereby terminated;

5) In accordance with SCR 3.450, Movant is directed to pay all costs associated with these disciplinary proceedings in the amount of $24,928.25 for which execution may issue from this Court upon finality of this Order.

All sitting. All concur.

ENTERED: October 23, 2008.

/s/ John D. Minton

Chief Justice

---

1. Boone Circuit Court, Case Number 98–CI–