**KENTUCKY BAR ASSOCIATION,**
Movant,

v.

**David L. HELMERS, Respondent.**

**No. 2011–SC–000106–KB.**

Supreme Court of Kentucky.

Sept. 22, 2011.

*OPINION AND ORDER*

The Board of Governors of the Kentucky Bar Association has recommended to this Court that Respondent, David L. Helmers, KBA Member No. 86989, who was admitted to practice law in Kentucky in 1997, and whose last known bar roster address is 110 East Third Street, Lexington, Kentucky 40508, be permanently disbarred from the practice of law as a result of six ethical violations contained in KBA File 9341. For the reasons set forth below, we agree with and adopt the Board's recommendation per SCR 3.370(10). A summary of the disciplinary charges against Respondent follows.

Respondent worked for the law firm of Gallion, Baker, and Bray as a clerk during law school and subsequently as an associate after being admitted to the Bar in 1997. He worked almost exclusively on researching potential claims for injuries arising from the use of the diet drug Fen–Phen. In 1998, a class action (hereinafter referred to as the *Guard* case)[1] was filed in the Boone Circuit Court against American Home Products (AHP) consisting of plaintiffs who alleged they were injured by Fen–Phen. The plaintiffs signed contingent fee contracts with William Gallion, Shirley Cunningham, Melbourne Mills, Jr., and Richard Lawrence for representation.[2]

---

1. *Darla Guard, et al. or Jonetta Moore, et al. v. A.H. Robins Company, et al.,* Boone Circuit Court, Case Number 98–CI–795

2. Stanley Chesley later became one of the plaintiffs' attorneys via a fee splitting agreement.

The contingent fee contracts provided that the attorneys were entitled to fees equaling 30% to 33.3% of any recovery in addition to expenses. Respondent, working under Gallion's supervision, spent countless hours on the *Guard* case. In fact, Respondent served in many occasions as a contact person for the plaintiffs and opposing counsel.

In 2001, the Boone Circuit Court ordered the parties to mediate. Respondent attended the mediation, along with Gallion, and took notes. Respondent also signed the final settlement agreement, which gave an award of $200,000,000 to the plaintiffs. The settlement was contingent on the decertification of the class action claims. It also required that unless 95% of the plaintiffs sign a release by a certain date, the settlement could be terminated by AHP. How the settlement award would be allocated among the various plaintiffs was the responsibility of their attorneys, including Respondent. Respondent subsequently appeared with Gallion, Chesley, and Cunningham in the Boone Circuit Court to decertify the class action and dismiss the case. The judge granted their request.

After the dismissal, Gallion instructed Respondent to prepare a schedule setting the monetary amount that each of the settling plaintiffs would receive. Respondent's work in the preliminary stages of the case made him the most knowledgeable of the plaintiffs' attorneys on the relative damages sustained by each plaintiff. Respondent created the schedule and presented it to AHP for approval.

Gallion then instructed Respondent to meet with many of the settling clients. Following Gallion's instructions, Respondent met with thirty-nine clients and obtained their releases.

When meeting with the individual clients, Respondent presented a proposed settlement amount, and led the client to believe that the settlement award offer came straight from AHP. He did not inform them that their attorneys (including himself) had decided how much their individual monetary award would be, that the individual client's case was just one of 440 cases that had been settled for an aggregate sum of $200,000,000.00, that the class action had been decertified and dismissed by the Boone Circuit Court, or that $7,500,000 of the settlement fund was being held to indemnify AHP against certain other claims.

Furthermore, Respondent had been instructed by the other attorneys to offer each client an amount substantially below the amount assigned to that client in the predetermined allocations that AHP had approved. If the client refused the initial offer, he or she was presented with a larger offer at a later date. This continued until the client agreed to the settlement, and simulated from the client's perspective, an actual settlement negotiation with AHP. The clients were never informed by Respondent that they could entirely refuse the offer and were not provided copies of the documents they signed. Additionally, Respondent told many of the clients that if they spoke to others about their settlement award, they could face a penalty assessment of $100,000.

Apparently, Gallion had misinformed Mills about the true terms of the settlement, and in early 2002, Mills discovered that the total settlement award was $200,000,000 and not $150,000,000 as Gallion had told him. To assuage Mills, Gallion instructed Respondent to make a second distribution of settlement money to the clients. Respondent set up meetings with the clients he had previously met with and presented them a letter stating that the trial court had authorized a second distribution. This letter also revealed to clients for the first time that an unspeci-

fied amount was being held in escrow to indemnify certain third parties, if necessary.[3] Respondent also asked if the plaintiffs would object if some of the undistributed award money was given to charity. A donation to the "Kentucky Fund for Healthy Living, Inc." in the amount of $20,000,000 was made.[4]

Because of their actions in the *Guard* case, most of the attorneys with whom Respondent worked have been disbarred. *See Gallion v. Kentucky Bar Association,* 266 S.W.3d 802 (Ky.2008); *Cunningham v. Kentucky Bar Association,* 266 S.W.3d 808 (Ky.2008); *Kentucky Bar Association v. Mills,* 318 S.W.3d 89 (Ky.2010).

In February 2002, the KBA Inquiry Commission opened an investigative file on Respondent. This investigation led to an Inquiry Commission complaint in October 2005. Respondent was subsequently charged with the following eight ethics violations.

- Count One charged that the Respondent was guilty of violating SCR 3.130–1.4(b) "by failing to inform his clients in the Guard case of relevant information, including but not limited to: the amount of the total aggregate settlement offer from AHP; the process that had been used to determine the amount that each of the clients would receive; the options available to the client in the event that participation in the aggregate settlement was refused by the client; the fact that the small amount of money left over after the second payment to clients was actually over $20 million; accurate information as to how and why the second distribution occurred; and by instructing or allowing others to give

his clients inaccurate information about multiple aspects of the case."

- Count Two charged that the Respondent violated SCR 3.130–1.8(g) "by, including but not limited to: failing to explain to his clients that AHP had agreed to an aggregate settlement of the claims of 440 clients and the total amount thereof; failing to explain that the settlement agreement stated that the attorneys would determine the amount that each client would receive from the aggregate settlement; failing to disclose or explain the proposed allocations in the settlement agreement; failing to communicate the amount of the total settlement from AHP to his clients; or failing to obtain the informed consent of his clients to participate in an aggregate settlement."

- Count Three charged that the Respondent violated SCR 3.130–2.1 "by failing to exercise independent professional judgment in the settlement distribution process or by failing to render candid advice to his clients during the representation, including advice relating to their participation in the aggregate settlement."

- Count Four charged that the Respondent violated SCR 3.130–5.2(a) "by violating Rules of Professional Conduct in part at the direction of Gallion, Cunningham, and/or Chesley."

- Count Five charged that the Respondent violated SCR 3.130–5.3(b) "by failing to appropriately supervise non-lawyer staff persons in order to ensure that their conduct was compatible with his ethical duties in their dealing with

3. By this point, no escrow account existed. All the settlement money that had not been paid to clients had been disbursed among the attorneys.

4. The Kentucky Fund for Healthy Living, Inc. paid board of directors consisted of Gallion, Mills, and Cunningham.

the clients and discussions about settlement matters."

● Count Six charged that Respondent violated SCR 3.130–8.3(a) "by violating the Rules of Professional Conduct by knowingly assisting the other lawyers, non-lawyers working for the lawyers, and the Boone Circuit Judge to violate the Rules of Professional Conduct."

● Count Seven charged that Respondent violated SCR 3.130–8.3(c) "by, including but not limited to: deceiving his clients into accepting the individual settlement amounts offered; deceiving clients about their claims even after demand for more specific accounting; misrepresenting to the Boone Circuit Court that his clients had agreed to donate a substantial portion of the total settlement received from AHP to charity; failing to inform the Boone Circuit Court that the attorneys had contingent fee contracts with all their clients which set a specific fee; misrepresenting the amount of attorneys fees paid to the lawyers relative to the payments to the clients; failing to disclose to clients that "extra funds were being held for various contingencies, or even that such contingencies existed; or providing, or assisting in providing false or misleading information to the Boone Circuit Court about the fees and expenses, as well as the manner in which the settlement had been reached with the clients."

● Count Eight charged that the Respondent violated SCR 3.130–5.1(c)(1) in that "The Respondent is fully responsible for any conduct of the lawyers in the Guard litigation, including Shirley Cunningham, William Gallion, Melbourne Mills, and Stanley Chesley, that he ratified with knowledge of

their conduct by virtue of SCR 3.130–5.1(c)(1)."

The Trial Commissioner held a hearing and determined that Respondent should be found guilty of Counts One, Two, Three, Four, Six, and Seven. His report recommended that Respondent be suspended from the practice of law in this Commonwealth for a period of five years. The Trial Commissioner expressly noted that Respondent was not the mastermind of the scheme, that he was subordinate to Gallion, Cunningham, and Mills, and that he cooperated with the criminal investigation into the matter. The Board of Governors of the Kentucky Bar Association by a vote of eleven to five, decided to consider the matter *de novo* instead of accepting the Trial Commissioner's recommendation. After oral arguments, the Board of Governors by a vote of sixteen to zero found Respondent guilty of Counts One, Two, Three, Four, Six, and Seven and not guilty of Counts Five and Eight. By a vote of eleven to five,[5] the Board recommended that Respondent be permanently disbarred from the practice of law in Kentucky and that he pay all costs associated with this action.

Respondent has not filed a notice with this Court to review the Board's decision, and we do not elect to review the decision of the Board under SCR 3.370(8). We have, however, taken note of the mitigating circumstances that prompted the Trial Commissioner to recommend a lesser punishment. We are aware that Respondent has had no other disciplinary issues raised against him. We are aware that Respondent was a young law student when he first began working for Gallion, and that Gallion was then a well-regarded and reputable attorney. We are aware that as a

---

5. The five members voting against permanent disbarment instead voted to suspend Respondent from the practice of law for five years as recommended by the Trial Commissioner.

new attorney working with Gallion, Cunningham, and Mills, Respondent was inexperienced, impressionable, and may have been influenced, and perhaps even led astray, by those more seasoned lawyers. But, we cannot ignore the fact it takes no technical expertise or experience in the settling of class action lawsuits, or any sophisticated understanding of the rules of ethics to know that Respondent's course of conduct, personally and directly deceiving his clients, some of whom had been egregiously injured, was wrong. That he did so at the direction of his employer does not permit us to overlook the serious deficiency in character revealed by the facts before us.

In light of the serious ethical violations committed by Respondent, permanent disbarment from the practice of law in Kentucky is reasonable. *See Gallion,* 266 S.W.3d 802; *Cunningham,* 266 S.W.3d 808; *Mills,* 318 S.W.3d 89. The decision of the Board is hereby adopted under SCR 3.370(10).

Thus, it is ORDERED that:

1) Respondent, David L. Helmers, KBA Number 86989, 110 East Third Street, Lexington, Kentucky 40508, is adjudged guilty of violating SCR 3.130–1.4(b), SCR 3.130–1.8(g), SCR 3.130–2.1, SCR 3.130–5.2(a), SCR 3.130–8.3(a), and SCR 3.130–8.3(c) and is hereby permanently disbarred from the practice of law in Kentucky. Respondent thusly, may never apply for reinstatement to the Bar under the current rules;

2) Respondent in accordance with SCR 3.390, shall notify all Courts in which he has matters pending and all clients for whom he is actively involved in litigation and similar matters, of his inability to continue representation;

3) Respondent shall immediately cancel and cease any advertising activities in accordance with SCR 3.390;

4) In accordance with SCR 3.450, Respondent is directed to pay all costs associated with these disciplinary proceedings in the amount of $39,673.53, for which execution may issue from this Court upon finality of this Order.

All sitting. All concur.

ENTERED: September 22, 2011.

/s/ John D. Minton Jr.

CHIEF JUSTICE