Barbara A. ABEL, Aileen Mullins, Andrea Messamore, Arlene Marshall, Belinda A. Million, Bobbie Deaton, Brenda Bray, Carol Ann Quisenberry, Charlotte Renee Hall, Christina Bucher, Claudia Sebastian–Shepard, Darby Daniels, Debbie Wampler, Easter Bishop, Eddie Lee Golden, Elizabeth C. Abney, Elizabeth D. Clore, Gwen Holt, Gwyin Cox, Hallie Traylor, Hubert Trosper, Irene Wells, Iva Stevens, James Cook, James Ingram, Janet Coons–Greene, Jessie Parsons, Jody Baldridge, Judy Bundy, Karen M. Austin, Kathy Pollitte, Leisa Perry, Linda Carr, Lorinda Calhoun, Lynn D. Jeffcoat, Mary Frazier, Melissa Gayhart, Mildred Swanson, Opal Collins, Pamela G. Abrams, Paul Floyd, Peggy W. Broughton, Peggy Grigsby, Reva Helton, Robert Wilson, Shannon M. Hall, Tami Holt, Terry Shanks, Toloria Howard, and Vickie Brewer, Appellants.

v.

J. Brent AUSTIN; Langston, Sweet and Freese, P.A.; and Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Appellees.

No. 2010–SC–000426–DG.

Supreme Court of Kentucky.

Oct. 24, 2013.

William C. Rambicure, Lexington, Angela Margaret Ford, Counsel for Appellants.

Perry Mack Bentley, Lucy Anne Pett, Carl Norman Frazier, Lexington, Counsel for Appellee J. Brent Austin.

Melissa Subit, Matthew John Bakota, Jeffrey R. Teeters, Counsel for Appellee Langston, Sweet and Freese, P.A.

David Clyde Trimble, Lexington, Robert A. Huffaker, Jr., Counsel for Appellee Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.

Opinion of the Court by Justice
VENTERS.

Each of the Appellants in this action was a plaintiff in a lawsuit brought in the Boone Circuit Court,[1] Boone County, Kentucky, against American Home Products, the company that marketed the anti-obesity drug combination commonly known as "Fen–Phen." As further explained below, Appellants' claims in that case were transferred from the Boone Circuit Court to a similar action pending in Alabama, where Appellants were represented by Kentucky attorney J. Brent Austin (Austin), the Mississippi law firm of Langston, Sweet & Freese, P.A. (Langston), and the Alabama law firm of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. (Beasley Allen). Appellants' claims against American Home Products were then promptly settled.

Several years later, Appellants brought this action in the Fayette Circuit Court alleging that by fraud, misrepresentation, and breach of fiduciary duty, the above-named attorneys, who are the Appellees herein, wrongfully withheld from each Appellant a substantial portion of the settlement award. The Fayette Circuit Court dismissed the action after concluding that Appellants had failed to commence the suit within the time provided by the applicable statute of limitations. The Court of Appeals affirmed.

On discretionary review in this Court, Appellants argue that: 1) the Court of Appeals erroneously affirmed a summary judgment dismissing the claims of *all* fifty Appellants when the motion before the trial court related to *only one* particular plaintiff; 2) Appellants' claims are governed by Kentucky's statutes of limitations rather than Alabama's; 3) Appellants' claims of misrepresentation are subject to the general five-year limitation period established by KRS 413.120(7) and (12), rather than the one-year limitation period for professional service malpractice established by KRS 413.245; and 4) the application of the statutes of limitations is dependent upon material facts which must be resolved by a jury. For the reasons set

---

1. Boone Circuit Court (Kentucky) Civil Action No. 98–CI–795. This action has also been referred to as *"Guard, et al. v. American Home Products, Inc."* or *"the Guard case."*

forth below, we affirm the opinion of the Court of Appeals.

## I. FACTUAL BACKGROUND

We begin this recitation of the essential facts with a brief explanation of how fifty plaintiffs in a Kentucky lawsuit with Kentucky lawyers ended up as plaintiffs in an Alabama court case represented by law firms from Mississippi and Alabama.

It was discovered in the mid–1990s that the popular diet drug Fen–Phen caused harmful medical consequences to some individuals. The maker of the drug, American Home Products, soon faced several class action and mass-tort lawsuits brought on behalf of Fen–Phen consumers. One such suit, *Moore, et al. v. American Home Products, et al.* (the *Moore* case), was filed in the Boone Circuit Court by Kentucky attorneys William Gallion, Melbourne Mills, and Shirley Cunningham. Appellants were among the more than 400 plaintiffs whose claims were consolidated in the *Moore* case.

A similar lawsuit, *Mary C. Stevens, et al. v. American Home Products, et al.* (the *Stevens* case), was brought in Montgomery, Alabama, where the claimants were represented by Appellees Langston and Beasley Allen.[2] A settlement was reached in the *Stevens* case whereby American Home Products would establish a Qualified Settlement Fund of some $215 million to settle as many as 3,000 Fen–Phen claims at $72,000.00 each. However, in order to effectuate the settlement, Langston and Beasley Allen had to certify within a given time-frame that they represented a certain minimum number of claimants who were willing to participate in the settlement. The problem was that Langston and Beasley Allen did not have enough Fen–Phen clients to qualify for the settlement.

Meanwhile in the *Moore* case, many of the plaintiffs had what Cunningham, Gallion, and Mills regarded as "low-value claims." These were individuals who would not fare well in the Kentucky litigation because they had not suffered the seriously disabling effects of Fen–Phen. Tom Methvin, an attorney with Beasley Allen, talked to Cunningham to see if some of the Kentucky claimants could be withdrawn from the *Moore* case and joined as claimants in the *Stevens* case. The *Moore* case attorneys saw the potential advantage to the clients and to themselves, and so they agreed to move the claims of fifty-three "low-value" *Moore* case plaintiffs to the *Stevens* case. Fifty of those fifty-three *Moore* case claimants are now the Appellants in this matter. Langston and Beasley Allen agreed to share with Cunningham, Mills, and Gallion the attorneys' fees associated with the transferred claims. Each of the *Moore* case plaintiffs involved in the transfer to the *Stevens* case had agreed to a contingent fee of 33%. The settlement of $72,000.00 for each claimant would, after deducting expenses of $87.84 per claim, yield the reasonable attorney fee of $23,968.32. Each client would receive a net settlement of $47,943.84. The attorneys' one-third share would be split as follows: $13,182.58 to Austin; $5,392.87 to Langston; and, $5,392.87 to Beasley Allen. Appellants allege that they were never informed that their claims would be dismissed in the *Moore* case so that they could join the *Stevens* case, and were never informed of the actual terms of the settlement.

Cunningham recognized that the *Moore* case attorneys could not continue to represent Appellants as they secured a settlement in the *Stevens* case. Therefore, they recruited Austin to nominally represent Appellants and to facilitate their transfer

2. Circuit Court of Montgomery, Alabama, Civil Action No. CV–2000–898.

to the *Stevens* case. Langston and Beasley Allen sent Austin the necessary settlement documents for each client. Within a few days, Austin had obtained the necessary client signatures and returned the signed settlement documents. The Special Master in *Stevens* then issued a payment from the settlement fund to Langston and Beasley Allen totaling $72,000.00 for each Appellant. Langston and Beasley Allen deducted their portion of the attorney fee, and wired the balance to Austin. In December 2000, and January 2001, Austin issued checks to Appellants. However, instead of the $47,943.84 sum contemplated in the settlement, Austin paid only $29,500.00 to each claimant.

Several months later, the *Moore* case was settled and American Home Products agreed to pay $200 million to the 431 claimants remaining in the *Moore* case. In the following months, irregularities and unanswered questions about the disbursement of the *Moore* case settlement fund aroused the attention of various parties, including the Kentucky Bar Association's disciplinary authorities. Consequently, a number of investigations into the Fen–Phen settlements began.[3]

Attorney Angela Ford of Lexington, Kentucky was retained by several of the *Moore* case claimants to investigate the disbursement of their settlement fund.

That investigation resulted in the filing of a lawsuit against Cunningham, Gallion, and Mills, and others.[4] In the paper chase to unravel the disbursement of *Moore* case settlement money, Ford discovered that several of the original claimants seemingly received no compensation. When she contacted those individuals she learned that they had received $29,500.00 from Austin. Tracing the source of those funds led Ford to the *Stevens* case settlement and to Beasley Allen and Langston. She also discovered that, like the claimants who remained in the *Moore* case, Appellants had not actually received the full amount allocated to them by the settlement agreement.

Eventually, fifty of the plaintiffs whose claims were transferred from the *Moore* case to the *Stevens* case retained Ford to initiate this action to recover the misappropriated funds. They alleged that no one had ever explained to them who Austin was or why he, rather than Mills, Gallion, or Cunningham, was acting as their attorney. Appellants alleged that they were not informed that their claims were transferred to the Alabama litigation and that they had not consented to the transfer. They alleged that the details of the settlement were not explained to them, but that each of them was warned by Austin that the settlement was confidential and that public discussion of it could land them in

---

3. It was later determined that the *Moore* case lawyers, with the assistance of then Boone Circuit Judge Bamberger, had wrongfully converted to their own use millions of dollars from the settlement funds. As a result of their misconduct, Cunningham, Gallion, and Mills were permanently disbarred from the practice of law in Kentucky. *See Cunningham v. Kentucky Bar Ass'n,* 266 S.W.3d 808 (Ky.2008); *Gallion v. Kentucky Bar Ass'n,* 266 S.W.3d 802 (Ky.2008); *Kentucky Bar Ass'n v. Mills,* 318 S.W.3d 89 (Ky.2010). An associate of Gallion, David Helmers, was also permanently disbarred, as was Circuit Judge Jay Bamberger. *See Kentucky Bar Ass'n v. Hel-*

mers, 353 S.W.3d 599 (Ky.2011); *Kentucky Bar Ass'n v. Bamberger,* 354 S.W.3d 576 (Ky. 2011). For his participation in the disposition of the funds, Stanley Chesley was also permanently disbarred. *See Kentucky Bar Ass'n v. Chesley,* 393 S.W.3d 584 (Ky.2013).

4. *Mildred Abbott, et al. v. Melbourne Mills et al.,* Boone Circuit Court (Kentucky) 2005–CI–00436, initially filed in the Fayette Circuit Court and transferred upon motion to the Boone Circuit Court. *See Abbott v. Chesley,* 413 S.W.3d 589, 2011–SC–000291–DG, 2013 WL 4635160 (Ky. Aug. 29, 2013).

jail. Assuming the truth of those allegations, it is apparent that Appellants could not have known in January 2001, when they received a settlement check for $29,500.00, that they should have received $47,943.84.

Appellants filed suit against Appellees on October 31, 2007. Among other defenses, Appellees asserted that the action was barred by the statutes of limitations. That issue was framed in the form of a motion for summary judgment. The trial court granted the motion and entered summary judgment dismissing Appellants' claims as time-barred. The Court of Appeals affirmed. We granted discretionary review to examine the central issue of which statute of limitations governs this legal malpractice claim.

## II. THE GRANTING OF SUMMARY JUDGMENT AGAINST *ALL* APPELLANTS DOES NOT REQUIRE REVERSAL

■ Before addressing the substantive issues at the heart of this appeal, we first address a procedural point that could require a remand to the trial court. Appellees' written motions for summary judgment specifically challenged as time-barred only the claim of Appellant Elizabeth Clore. Appellants assert that the only issue properly before the trial court was whether Clore's claim was time-barred. Although Appellants argue that the dismissal of Clore's claim was error, they argue more vigorously that the trial court compounded the error by extending the dismissal to the claims of the other Appellants, who were not the subjects of the pending motion. Appellants submit that the Court of Appeals erred by affirming those dismissals. We disagree, and so we affirm the Court of Appeals although we do so upon different grounds.

Because Appellants' lawsuit was filed more than six years after the distribution of the *Stevens* case settlement, it was immediately apparent that one of the threshold issues would be whether the statute of limitations had run, and whether the Alabama or the Kentucky statute of limitations was controlling. It was also apparent from the complaint itself that most, if not all, of the material facts underlying the claims of each plaintiff were identical. Indeed, since their removal from the *Moore* litigation and entry into the *Stevens* case, Appellants' claims were treated almost as fungible commodities. There was no individualized consideration of any aspect of Appellants' cases. The only avenue for factual variances relevant to the statute of limitations issue was in the timing of their discovery of information that should have apprised them of the potential claims against Appellees. And even in that factual arena, because it was Ford's investigation on behalf of all Appellants that was uncovering the details of Appellees' conduct, most if not all of the events relative to the discovery of the claim were uniformly applicable to all Appellants.

With that understanding, all parties agreed at an August 28, 2008 conference with the trial court that the litigation would proceed most efficiently by first addressing the statute of limitations issue as it pertained to one representative plaintiff, and then applying generally the results of that resolution to the remaining plaintiffs, subject to whatever relevant factual variations might exist for specific individuals. The trial court noted Appellees should:

file your motion with the example plaintiff, whoever that is, and then they [Appellees] will file their stipulation ... that includes all the forty-eight [sic] remaining plaintiffs and then ... I will be able to decipher all that information based on your motion ... and figure out, first of all, whether [the statute of limitations

defense] even applies. If [the statute of limitations defense] does apply, then look at the chart, the stipulation, and say, "okay, here [is] what it applies to" or "no, it doesn't apply".... I have that chart, then based upon your motion, I can determine whether or not [the statute of limitations] is applicable and if so, to whom.

Counsel for both sides acquiesced in the procedure. Appellees then filed motions for summary judgment arguing the undisputed facts as they related to the claim of a representative plaintiff, Elizabeth Clore, and the events that would have led to her discovery of the cause of action and triggered the running of the clock on her commencement of a civil action. The stipulations included a recitation of the critical discoveries for all Appellants that occurred between the settlement disbursements and the filing of the lawsuit six and a half years later.

The trial court attached particular significance to these two events: 1) On February 4, 2005, Attorney Ford sent a letter to Clore and to the other litigants in the *Moore* case, including Appellants, informing them of possible fraud in their settlement; and 2) On October 13, 2006, as attorney for Appellants, Ford received documents from Beasley Allen showing that each Appellant's proper share of the settlement was $47,943.84, not the $29,500.00 that they actually received. Because the information conveyed in each of those events applied uniformly to all Appellants, the trial court extended its analysis to all Appellants. On December 15, 2008 the trial court entered an "Opinion & Order" dismissing as time-barred, not only Elizabeth Clore's claim, but also the identical claims of all Appellants.

Appellees promptly, but retroactively, filed motions for summary judgment dismissing the claims of the other Appellants.

Appellants immediately filed a Notice of Appeal and then asserted that the Notice of Appeal divested the trial court of jurisdiction to further address the matter. The trial court entered an amended final order which modified a point not pertinent to this appeal, but otherwise reiterating the dismissal of all the claims as being time-barred.

Based upon the discussion at the August 2008 conference, the better practice would have been for the trial court to limit the first judgment to the issue as it pertained to Clore alone, and then consider additional motions pertaining to the remaining claimants, subject to any distinguishing circumstances of individual cases that might compel a different outcome. Nevertheless, Appellees' motions afforded Appellants the perfect opportunity to respond with evidence of distinguishing circumstances. Appellants also could have filed their own motion to show how the rationale for dismissal of Clore's claim was not applicable to the others. They did not do so. More importantly, there is nothing in the record that would lead us to conclude that the dispositive facts material to the issue in Clore's case are not equally applicable to the remaining Appellants.

We cannot approve of the procedural short-cut that occurred here; the Rules of Civil Procedure provide structure to facilitate the efficient and orderly management of civil litigation. From a technical standpoint, the order dismissing the claims of all Appellants should have been preceded by a motion that requested that relief, rather than the other way around. But we have said in other situations that a summary judgment may be properly granted despite the lack of a motion requesting such relief *if* the formal motion for summary judgment would have been a "useless formality." *See Osborne v. Commonwealth,* 185 S.W.3d 645, 650–51 (Ky.2006) (quoting

*Green v. Bourbon County Joint Planning Comm'n,* 637 S.W.2d 626, 630 (Ky.1982) and *Collins v. Duff,* 283 S.W.2d 179, 183 (Ky.1955)) (A party opposing summary judgment was properly granted summary judgment despite the lack of a motion when the trial judge had "all pertinent issues before him at the time the case is submitted" and "a motion for summary judgment by the [non-moving party] would have been a useless formality.").

Here, all Appellants were represented by the same attorney, all were equally and fairly apprised of the pending issues and all had a fair opportunity to be heard. It cannot be seriously disputed that the factors that prompted the trial court to determine that Clore's claim was time-barred were equally applicable to the other Appellants. There was ample opportunity to demonstrate any distinguishing factors, and so no Appellant was prejudiced by the trial court's inclusion of all Appellants in the judgment. A second motion for summary judgment relating to all remaining Appellants was technically appropriate but would have been a "useless formality." Under these circumstances, we decline to reverse the trial court on that basis.

### III. APPELLANTS' CLAIMS WERE SUBJECT TO KENTUCKY'S STATUTES OF LIMITATIONS

█ Appellants argue that the Court of Appeals erred in applying the Alabama statute of limitations, and that their claims are governed instead by Kentucky's statutes of limitations. We agree with Appellants on that point. The Court of Appeals erred in its conclusion that KRS 413.320 required the application of Alabama's stat-

ute of limitations. We nevertheless affirm the Court of Appeals' resolution of the case, but we do so because we agree with Appellees that Appellants' suit was not timely filed under the applicable Kentucky statutes.

In response to Appellants' complaint, Appellees asserted the affirmative defense of the statute of limitations. They specifically argued that KRS 413.320 requires the application of Alabama's statute of limitations, based upon the fact that Appellants' claims arose out of their representation by Appellees in the Alabama *Stevens* litigation.

KRS 413.320, Kentucky's "borrowing" statute, provides:

> When a cause of action has arisen in another state or country, and by the laws of this state or country where the cause of action accrued the time for the commencement of an action thereon is limited to a shorter period of time than the period of limitation prescribed by the laws of this state for a like cause of action, then said action shall be barred in this state at the expiration of said shorter period.

█ Alabama's statute governing the time for filing a suit for legal malpractice operates as a statute of repose.[5] Ala.Code 6–5–574(a) (1975) provides that "*[a]ll* legal service liability actions against a legal service provider must be commenced within two years after the act or omission or failure giving rise to the claim[.]" (emphasis added). If the claim could not have been discovered within the two year period, the statute requires the commencement of an action "within six months from the date of such discovery" or six months from "the date of discovery of facts which

---

5. "Statutes of limitations limit the time in which a plaintiff may bring suit *after a cause of action accrues,* whereas statutes of repose [begin at a fixed point in time and, therefore, may] potentially bar the plaintiff's suit *before*

the cause of action arises." *McCollum v. Sisters of Charity of Nazareth Health Corp.,* 799 S.W.2d 15, 18 (Ky.1990) (emphasis in original).

would reasonably lead to such discovery, whichever is earlier[,]" but in no event can the action be commenced more than four years after the act, omission, or failure that gave rise to the claim. *Id.* Since the last "act, omission, or failure" giving rise to Appellants' claims was the disbursement of settlement money to Appellants in January 2001, the deadline under Alabama law for filing suit was January 2005—long before the October 31, 2007 filing of Appellants' complaint.

The Court of Appeals determined that KRS 413.320 required the application of the Alabama statute because "the pertinent events related to the Alabama attorneys were processed, settled, reviewed, and confirmed by an Alabama court." We disagree. The "pertinent events" that gave rise to Appellants' claims did not occur in Alabama. As discussed below, Appellants' cause of action accrued in Kentucky.

■ Although we have often discussed *when* an action accrues, we have less frequently addressed the question of *where,* for purposes of KRS 413.320, the cause of action accrued.[6] It is clear however that *where* an action "accrues" is inextricably intertwined with *when* it accrues. *See CMACO Auto. Sys., Inc. v. Wanxiang Am. Corp.,* 589 F.3d 235, 243 n. 7 (6th Cir.2009). "The place where a cause of action arises is the place where the operative facts that give rise to the action occur.... [I]t is the happening of the last of such facts which brings the cause of action into existence[.]" *Helmers v. Anderson,* 156 F.2d 47, 50 (6th Cir.1946). *Helmers* further explains:

> The time when a cause of action arises and the place where it arises are necessarily connected, since the same act is the critical event in each instance. *The*

> *final act which transforms the liability into a cause of action necessarily has both aspects of time and place. It occurs at a certain time and in a certain geographical spot.*

*Id.* at 51 (emphasis added). Because "when" a cause of action accrues is closely connected to "where" it accrues, knowing when the "final act" occurred that ripened the matter into a cause of action aids in ascertaining *where* the cause of action accrued.

■ "A cause of action does not exist until the conduct causes injury that produces loss or damage." *Alagia, Day, Trautwein & Smith v. Broadbent,* 882 S.W.2d 121, 126 (Ky.1994) (quoting *Saylor v. Hall,* 497 S.W.2d 218, 225 (Ky.1973)); *see also Meade County Bank v. Wheatley,* 910 S.W.2d 233, 235 (Ky.1995) ("Without damages, there is no ripened claim.").

■ We recognized in *Pedigo v. Breen* that "[a] professional negligence claim does not accrue until there has been a negligent act and until reasonably ascertainable damages are incurred." 169 S.W.3d 831, 833 (Ky.2004). *Doe v. Golden & Walters, PLLC,* holds that "without legally cognizable damages, there is no ripe claim for legal malpractice." 173 S.W.3d 260, 272 (Ky.App.2005).

Appellants suffered no injury or damage by the manner in which Appellees handled the litigation in the Alabama court. By every account, they achieved a generous settlement of their claims. There is no claim that Appellants were injured by any of the conduct that occurred in the Alabama litigation. The damages alleged by Appellants occurred when the settlement fund was disbursed. Based upon exhibits in the record and the trial court's recita-

---

**6.** We hasten to point out that our discussion relates to the issue of *where* a cause of action accrues. Determining the proper venue for the adjudication of a cause of action is a different issue. Venue, of course, is governed by specific venue statutes not pertinent to the issues in this appeal.

tion of facts viewed in the light most favorable to Appellants, Beasley Allen wired the settlement money for all Appellants to Austin and Cunningham in Kentucky. They undertook the task of sending each Appellant his or her proper share of the award. If Appellants were, as they claim, shortchanged in the distribution of their settlement money, it happened in Kentucky. More significantly, the deficient payments were received in Kentucky where all Appellants resided and the injurious consequences of the alleged wrongful conduct occurred in Kentucky.

■ "A cause of action is deemed to accrue in Kentucky where negligence and damages have both occurred[.]" *Queensway Fin. Holdings Ltd. v. Cotton & Allen, P.S.C.*, 237 S.W.3d 141, 147 (Ky.2007) (quoting *Michels v. Sklavos*, 869 S.W.2d 728, 730 (Ky.1994)); *Northwestern Nat'l Ins. Co. v. Osborne*, 610 F.Supp. 126, 128 (E.D.Ky.1985). Appellants' causes of action accrued *when* the individual checks, allegedly deficient by misappropriated sums of money, were sent to them. *Where* that happened was Kentucky, not Alabama. Therefore, Appellants' causes of action accrued in Kentucky, not in Alabama. KRS 413.320 cannot be applied in this instance to compel the application of Alabama's statute of limitations. Appellants' claims are governed by the Kentucky statutes of limitations.

## IV. THE ONE–YEAR LIMITATION OF KRS 413.245 IS APPLICABLE IN THIS CASE; THE FIVE–YEAR LIMITATION OF KRS 413.120 IS NOT APPLICABLE

Having concluded that this case is governed by the Kentucky statutes of limita-

tions, rather than Alabama law, we turn now to the question of *which* Kentucky statute applies. Appellants point out that their complaint against Appellees included allegations against Appellees for fraudulent misrepresentation. Appellants contend that aspect of their claim, if not the whole claim, was subject to the five-year limitation provided by KRS 413.120(7) and KRS 413.120(12).[7]

The trial court found that the one-year limitation of KRS 413.245 was controlling, and we agree. KRS 413.245 provides:

> Notwithstanding any other prescribed limitation of actions which might otherwise appear applicable, except those provided in KRS 413.140, a civil action, whether brought in tort or contract, arising out of any act or omission in rendering, or failing to render, professional services for others shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured. Time shall not commence against a party under legal disability until removal of the disability.

■ "Professional services" is defined by KRS 413.243 as "any service rendered in a profession required to be licensed, administered and regulated as professions in the Commonwealth of Kentucky, except those professions governed by KRS 413.140."[8] The practice of law is such a profession and all of Appellants' claims clearly arise out of "act[s] or omission[s] in rendering, or failing to render, profession-

**7.** As relevant to Appellants' argument, KRS 413.120 states: "The following actions shall be commenced within five (5) years after the cause of action accrued: ... (7) An action for an injury to the rights of the plaintiff, not arising on contract and not otherwise enumerated; ... (12) An action for relief or damages on the ground of fraud or mistake."

**8.** KRS 413.140 identifies "Actions to be brought within one year." It expressly includes, at subparagraph (e) "negligence or

al services." KRS 413.245 is clearly applicable to Appellants' claims. Moreover, we conclude that KRS 413.245 is the *exclusive* statute of limitations governing claims of attorney malpractice.

 We begin our analysis of Appellants' argument with the basic rules of statutory construction. Of course, in construing a statute, our goal is to give effect to the intent of the General Assembly. *Petitioner F v. Brown*, 306 S.W.3d 80, 85 (Ky.2010). "To determine legislative intent, we look first to the language of the statute, giving the words their plain and ordinary meaning." *Id.* (quoting *Richardson v. Louisville/Jefferson County Metro Gov't*, 260 S.W.3d 777, 779 (Ky.2008).)

We confronted a similar question in *Troxell v. Trammell*, 730 S.W.2d 525 (Ky. 1987), where the issue was whether a motorcyclist's claim for negligence against the operator of a pickup truck was governed by the two-year limitation established by the Motor Vehicle Reparations Act (KRS 304.39–230(6)) or the one-year personal injury statute of limitations (KRS 413.140(1)(a)). There, we found no indication that the General Assembly intended to create two different statutes of limitations for the same conduct—negligently causing personal injury in a vehicular collision. *Troxell*, 730 S.W.2d at 528. In the same vein, we see no reason to believe that the General Assembly intended to subject

claims of attorneys' misconduct to two different limitations periods. More significant is the express language of KRS 413.245. Its opening clause, "Notwithstanding any other prescribed limitation of actions which might otherwise appear applicable," plainly evinces a legislative intent to rule out the application of other statutes of limitations.

 We are further guided by the familiar principles of statutory construction. "The applicable rule of statutory construction where there is both a specific statute and a general statute seemingly applicable to the same subject is that the specific statute controls." *Parts Depot, Inc. v. Beiswenger*, 170 S.W.3d 354, 361 (Ky. 2005) (quoting *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814, 819 (Ky. 1992)). Additionally, where an apparent conflict in statutes exists, the "later statute is given effect over an earlier statute." *Bowling v. Kentucky Dep't of Corr.*, 301 S.W.3d 478, 491 (Ky.2009) (quoting *Troxell*, 730 S.W.2d at 528).[9]

KRS 413.245 relates exclusively to civil actions brought against providers of professional services, such as attorneys, for injury arising out of that service. It is, therefore, more specific than the general, five-year limitation provided by KRS 413.120(7) or (12). A review of the legislative history shows that KRS 413.245 is also the more recently enacted statute.[10]

malpractice" actions against "a physician, surgeon, dentist, or hospital licensed pursuant to KRS Chapter 216," and, at subparagraph (f) "[a] civil action, arising out of any act or omission in rendering, or failing to render, professional services for others, whether brought in tort or contract, against a real estate appraiser holding a certificate or license issued under KRS Chapter 324A[.]" KRS 413.140(e)-(f).

9. We note also that in *Troxell*, the Court was influenced by the desirability of applying the longer of the two competing limitation periods, "because statutes of limitation are in derogation of a presumptively valid claim, a longer period of limitations should prevail where two statutes are arguably applicable." 730 S.W.2d at 528. We continue in agreement with that concept, but as otherwise stated herein, we cannot conclude that KRS 413.245 and KRS 413.120 are both applicable.

10. The legislative history reveals that KRS 413.245 was enacted in 1980, while the more general provisions of KRS 413.120(7) and (12) have been in effect since before 1970.

We are compelled by our analysis to conclude that claims brought by clients or former clients against attorneys for acts or omissions arising out of the rendition of professional services are governed exclusively by the one-year limitation periods established by KRS 413.245. The provisions of KRS 413.120 are not applicable.

## V. THERE IS NO GENUINE ISSUE OF FACT THAT APPELLANTS DISCOVERED THEIR CAUSE OF ACTION MORE THAN ONE YEAR BEFORE THE SUIT WAS FILED

 Finally, we address the issue of whether the filing of Appellants' complaint was within the one-year limitation period provided by KRS 413.245.[11] Obviously, if the "occurrence" that triggered Appellants' cause of action was wrongfully withholding settlement money belonging to Appellants, the suit filed on October 31, 2007 was more than a year after the occurrence. The viability of Appellants' case therefore rests upon the discovery prong of KRS 413.245, i.e. was the action filed within one year from the date the cause of action was, or reasonably should have been, discovered by Appellants? We agree with the trial court's conclusion that it was not.

In order to demonstrate that the one-year limitation period had expired before the lawsuit commenced, Appellees need not show the precise date upon which Appellants reasonably should have discovered their cause of action. Appellees need to demonstrate only that the discovery was made, or should have been made, more than one year before the action was commenced. The record discloses several points upon which it could reasonably be argued that Appellants should have been on notice that they had a claim. We give Appellants the benefit of any doubts about the conclusions that might reasonably have been drawn from the information gathered before October 13, 2006. But on that date, their attorney knew from information provided by Appellee Beasley Allen that each Appellant's share of the settlement, after deduction for expenses and attorneys fees, was $47,943.84, not the $29,500.00 share that each had received.

We disagree with Appellants' contention that genuine issues of fact existed regarding the effective date of the discovery of their claim, to which they were entitled to a jury's resolution. It cannot reasonably be doubted that as of October 13, 2006, one year and fifteen days before the filing of the lawsuit, Appellants through their attorney knew with mathematical certainty that they had each been shorted by more than $18,000.00 by their former lawyers in the Fen–Phen case. They may not have understood why they were shorted or where the money went, but as of that date, they knew or should have known that they had a cause of action, and they then had one full year to investigate further, to resolve their doubts, to satisfy themselves that there was no innocent explanation for the shortfall, or to undertake whatever preparatory measures they felt were necessary before filing suit. The action was not commenced within one year of that date and, therefore, it was barred, as the trial court correctly determined.

11. KRS 413.245: "Notwithstanding any other prescribed limitation of actions which might otherwise appear applicable, except those provided in KRS 413.140, a civil action, whether brought in tort or contract, arising out of any act or omission in rendering, or failing to render, professional services for others shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured. Time shall not commence against a party under legal disability until removal of the disability."

## VI. CONCLUSION

For the reasons stated above, we affirm the opinion of the Court of Appeals dismissing Appellants' claims as barred by KRS 413.245.

MINTON, C.J., ABRAMSON, CUNNINGHAM and KELLER, JJ., concur. SCOTT, J., dissents by separate opinion in which NOBLE, J., joins.

SCOTT, J., dissenting:

I must respectfully dissent from the majority's opinion because it extends the one-year professional services statute of limitations set forth in KRS 413.245 to acts of common theft at the expense of Kentucky citizens. Given that Appellee Austin provided only nominal services to Appellants, and considering the limited extent and non-legal nature of those services, I believe the five-year limitation of KRS 413.120 should apply to Appellants' claims against Austin. He served as nothing more than a conduit for the transfer of clients from *Moore*, the Kentucky class action suit, to *Stevens*, the Alabama class action suit.

For the one-year professional services limitation to apply, Appellants' claims must "aris[e] out of any act or omission in rendering, or failing to render, professional services." KRS 413.245. KRS 413.243 defines professional services as those "required to be licensed, administered and regulated as professions in the Commonwealth." I agree with the majority that the practice of law is a professional service as defined by KRS 413.243. However, I disagree with the majority's conclusion that Appellant's claims in this case "clearly arise" from the rendering of professional services.

Although the majority concludes that Appellants' claims arise from professional services, it never asks exactly what professional services Austin rendered. The mere fact that Austin is an attorney does not automatically mean that any time he handles money he is performing a professional service. He still must perform some underlying legal service to fall under the ambit of KRS 413.245.

In determining whether a particular act or service is professional in nature, the court should look past the simple fact that the defendant is licensed in a regulated profession and appraise the nature of the act or service rendered and the circumstances under which it was performed. *See Churchill v. Columbus Community Hosp., Inc.*, 285 Neb. 759, 830 N.W.2d 53, 59 (2013). Doing so in the present case reveals that Austin's actions were not professional services.

First, considering the circumstances under which Austin acted, Austin's brief admits, "Mr. Austin understood that Appellants' cases had already been worked up and settled, and that his role was to effectuate the settlement and disburse proceeds." Essentially, Austin's role was to facilitate the transfer of Kentucky clients from the *Moore* suit into the *Stevens* settlement from Alabama. As stated by the majority, the Alabama attorneys of Langston and Beasley Allen reached a settlement in the *Stevens* case, collected the settlement funds, and sent the funds to Austin for the purpose of disbursement to Kentucky clients. Austin's role was not to render legal services in this particular instance, that work had already been done by the attorneys in Alabama; he was only to handle the disbursement of funds to which Appellants were already legally entitled. Under these circumstances, Austin's actions should not be protected by a statute of limitations that applies to professional services. KRS 413.245.

Next, considering the nature of the services rendered by Austin, the majority ad-

mits, Austin's representation of Appellants was only "nominal." It is difficult to glean from the majority's Opinion how Austin "represented" Appellants in this instance. The services performed by Austin—the disbursements of funds—were limited and non-legal in nature. Moreover, the activities performed by Austin were not even attendant to any legal services previously rendered. He simply received a wire transfer and wrote checks distributing funds he played no part in earning. The action of disbursing money alone cannot be considered a professional service; otherwise, this Court would be forced to apply the one-year limitation of KRS 413.245 to occupations such as bank tellers.

KRS 413.245 protects doctors, lawyers, and engineers with a shortened statute of limitations for claims arising from the rendering of professional services. Going beyond the simple fact that Austin was a licensed attorney when he misappropriated settlement funds and more thoroughly considering the nature of his services and the circumstances under which they were performed, I believe that Austin's actions cannot be considered professional services. Therefore, I cannot agree with the majority that Appellant's claims against Austin are time-barred by KRS 413.245, and I would find the claims properly fall under the five-year limitation of KRS 413.120. Thus, I respectfully dissent.

NOBLE, J., joins.