RENDERED: JULY 9, 2020
TO BE PUBLISHED

# Supreme Court of Kentucky

2018-SC-000538-DG
AND
2018-SC-000558-DG.

DATE 9/24/20

SEILLER WATERMAN, LLC; PAMELA M. GREENWELL; GORDON C. ROSE; AND PAUL J. HERSHBERG         APPELLANTS/CROSS-APPELLEES

V.

ON REVIEW FROM COURT OF APPEALS
CASE NO. 2017-CA-000024-MR
JEFFERSON CIRCUIT COURT NO. 16-CI-002522

RLB PROPERTIES, LTD.         APPELLEE/CROSS-APPELLANT

## OPINION OF THE COURT BY JUSTICE HUGHES

## AFFIRMING IN PART, REVERSING IN PART, AND REINSTATING

RLB Properties, Ltd. filed a complaint against the law firm of Seiller Waterman, LLC and three of its attorneys based upon their allegedly wrongful acts undertaken on behalf of the firm's clients, Skyshield Roof and Restoration, LLC and Jacob Blanton. The challenged actions included the filing of an invalid materialman's and mechanic's lien against commercial property owned by RLB Properties and the subsequent filing of a third-party complaint against RLB Properties. RLB Properties' complaint against Seiller Waterman alleged wrongful use of civil proceedings and abuse of civil process; civil conspiracy;

slander of title; violation of KRS[1] 434.155 by filing an illegal lien; negligence; and negligent supervision. The Jefferson Circuit Court dismissed all of these claims either for failure to state a claim upon which relief can be granted or for failure to file timely under the applicable statute of limitations. The Court of Appeals affirmed the dismissals, except for the slander of title, civil conspiracy, and KRS 434.155 violation claims, finding that KRS 413.245 would not time bar the claims if malice were proven.

On discretionary review, we affirm in part and reverse in part. We affirm the Court of Appeals' decision that a professional negligence action may not be brought against an attorney by a party who is neither the client nor an intended third-party beneficiary of the attorney's work. We further affirm that when pleading wrongful use of civil proceedings against an attorney or law firm, neither earning attorney fees nor filing a claim seeking damages on behalf of a client is an improper purpose allegation sufficient to survive a motion to dismiss. Finally, we reverse the Court of Appeals' decision that KRS 413.245, the one-year statute of limitations applicable to the rendering of professional services, does not apply to claims against attorneys when malice is alleged.

## FACTUAL AND PROCEDURAL BACKGROUND

### The underlying contract dispute regarding building repairs

Skyshield Roof and Restoration, LLC (Skyshield), an Indiana limited liability company, engaged Seiller Waterman to represent it in various matters

---

[1] Kentucky Revised Statute.

2

on or about March 10, 2014. Around that same date, Pamela M. Greenwell, a member of the law firm, prepared and eventually executed and filed with the Kentucky Secretary of State, a Certificate of Authority, authorizing Skyshield to lawfully transact business in Kentucky.[2] The genesis of the present action was a contract dispute between Skyshield and RLB Properties (RLB) regarding repairs to a commercial property.

The Marmaduke Building, a property owned by RLB in downtown Louisville, suffered wind damage in 2012 and water damage in 2014. RLB entered into a contract with Skyshield to repair the building. Sol Azteca's Louisville, Inc. (Sol Azteca), a tenant in the building, also contracted with Skyshield and Jacob Blanton, Skyshield's sole member, to repair damage to the Sol Azteca restaurant caused by frozen water pipes. In June 2014, Sol Azteca filed suit against Skyshield and Blanton alleging, among other things, that Skyshield and Blanton breached the contract by failing to perform repairs in a good and workmanlike manner and by failing to complete repairs. Sol Azteca's complaint further alleged that RLB had already paid Skyshield hundreds of thousands of dollars to repair the building.

On August 5, 2014, Skyshield filed a $1,500,000 materialman's and mechanic's lien against the Marmaduke Building in the Jefferson County Clerk's Office for labor rendered and materials actually furnished after

---

[2] In the Certificate, Greenwell agreed that S W Agent, LLC would serve as the service of process agent for Skyshield. S W Agent, LLC is a Kentucky limited liability company whose members and managers are also members of or attorneys associated with Seiller Waterman, including Greenwell.

3

provision for all just credits and set-offs. The lien, attested to by Blanton, was prepared by Gordon C. Rose, an attorney associated with Seiller Waterman, and was lodged for record by the law firm. On August 12, 2014, Greenwell and Paul J. Hershberg, another attorney with Seiller Waterman, filed a verified third-party complaint against RLB on behalf of Skyshield in the suit initiated by Sol Azteca. The complaint alleged RLB owed Skyshield a substantial amount for services performed under the parties' contract.

RLB retained counsel and filed a response to the third-party complaint, denying that RLB owed Skyshield any money. RLB also filed a counterclaim against Skyshield and Blanton, alleging 1) breach of contract, 2) defective workmanship, 3) strict liability, 4) fraud, 5) fraud in the inducement, 6) conversion of entrusted money, 7) conversion of property, 8) unjust enrichment, and 9) slander of title.

On January 29, 2015, RLB's counsel wrote a letter to Seiller Waterman advising that the lien was satisfied at the time it was filed, stating that it was invalid on its face, and demanding that it be immediately released. Seiller Waterman did not respond to the letter on Skyshield/Blanton's behalf. On March 6, 2015, RLB's counsel filed a motion in the lawsuit to dissolve the materialman's and mechanic's lien.

Less than a week later, on March 12, 2015, Seiller Waterman filed a motion to withdraw as counsel for Skyshield and Blanton, citing irreconcilable differences with its clients. The trial court orally granted Seiller Waterman's motion on March 16, 2015, and further granted Skyshield and Blanton thirty

4

days in which to obtain new counsel. For reasons that are not apparent in the record, the trial court's written order was not entered by the clerk until May 29, 2015. Neither Seiller Waterman nor anyone else acting on behalf of Skyshield and Blanton ever responded to RLB's motion to dissolve the materialman's and mechanic's lien.

On May 29, 2015, the trial court entered its order granting the motion to dissolve the lien, stating:

> The Materialman's and Mechanic's Lien Statement ("Lien Statement") recorded against the Marmaduke Building by SkyShield Roof and Restoration, LLC ("SkyShield") on August 5, 2014 is invalid on its face because SkyShield cannot substantiate that the balance remaining due for labor rendered, and materials actually furnished, after provisions for all just credits and set-offs, is $1.5 million, or any amount. Therefore, the Court orders that the lien is dissolved.

> At the time the Lien Statement was filed on August 5, 2014, the underlying lien had been satisfied because RLB paid money to SkyShield in excess of the amount of labor performed and materials provided, plus expenses. SkyShield was given proper notice that the lien was satisfied and should be released no later than January 29, 2015 when counsel for RLB sent a letter to that effect to counsel for SkyShield. Accordingly, the Court hereby directs and authorizes the Jefferson County Master Commissioner to execute and file with the Jefferson County Clerk a release of the lien.

Several weeks later, the trial court ordered Skyshield and Blanton to pay RLB the attorney fees it incurred as a result of the filing of the motion to dissolve the lien.

After a hearing and finding Skyshield and Blanton in default, the trial court entered a July 31, 2015 judgment against them and in favor of RLB on RLB's counterclaim and dismissed Skyshield's third-party complaint with

5

prejudice. The trial court awarded RLB $924,767.39 in compensatory damages, $2,000,000 in punitive damages, $68,257.29 for attorney fees, and $63,400 in statutory fees under KRS 382.365 for Skyshield's and Blanton's failure to timely release the materialman's and mechanic's lien.[3] Compensatory damages consisted of $556,583.84 for monies paid to Skyshield and Blanton for which no labor was rendered or materials furnished;[4] $267,779.62 for amounts expended by RLB to complete the repairs; $60,403.93 to remedy defective workmanship by Skyshield and Blanton; and $40,000 for the value of personalty converted by Skyshield and Blanton.

**The current action against Seiller Waterman**

On May 31, 2016, RLB filed a verified complaint against Seiller Waterman, LLC; Pamela M. Greenwell; Gordon C. Rose; and Paul J. Hershberg (collectively "Seiller Waterman") based upon their legal representation of Skyshield and Blanton in the underlying building repair dispute and the preparation of the materialman's and mechanic's lien. The complaint alleged the statements contained in the lien to the effect RLB owed Skyshield $1,500,000 for labor rendered and materials actually furnished were groundless, were material misstatements of fact and were false, with all of this being information which Seiller Waterman either knew or should have known. RLB claimed wrongful use of civil proceedings (WUCP) and abuse of civil

---

[3] All awards were to bear interest at the rate of 12% compounded annually until paid.

[4] This included $47,809.65 prejudgment interest.

6

process; civil conspiracy in filing the mechanic's lien and the verified third-party complaint;[5] slander of title; filing of an illegal lien in violation of KRS 434.155(1) (supporting a statutory action pursuant to KRS 446.070); negligence; and negligent supervision. Seiller Waterman moved the trial court to dismiss all of RLB's claims pursuant to CR[6] 12.02 and CR 12.03. The trial court granted Seiller Waterman's motion in a detailed Opinion and Order entered on November 30, 2016. The trial court dismissed RLB's claims for negligence and negligent supervision because a client's adversary in litigation is not in the class of nonclient intended beneficiaries who may bring a negligence claim against an attorney; RLB's claim for WUCP because RLB failed to allege the required improper purpose; and RLB's other claims as being time barred by KRS 413.245.[7]

As noted, the Court of Appeals affirmed the trial court in part and reversed and remanded in part. The Court of Appeals found the trial court erred by dismissing the claims revolving around the filing of the mechanic's lien, i.e., the slander of title, the filing of an illegal lien, and the civil conspiracy claims, but affirmed the trial court's dismissal of the other claims.[8]

---

[5] RLB alleges that the conspiracy between Seiller Waterman and Skyshield and Blanton was designed to extort money from RLB.

[6] Kentucky Rule of Civil Procedure.

[7] Having concluded that the slander of title claim was barred due to the one-year statute of limitations, the trial court concluded that the civil conspiracy claim, which was premised on a valid slander of title claim, could not survive.

[8] The trial court's dismissal of RLB's abuse of process and negligent supervision claims, affirmed by the Court of Appeals, is not before this Court.

7

Both Seiller Waterman and RLB petitioned this Court for discretionary review. We granted Seiller Waterman's motion to consider whether the Court of Appeals erred by concluding an allegation of malice removes a claim involving the rendering of legal services from the one-year limitation period set forth in KRS 413.245. We granted RLB's motion to address whether the trial court and the Court of Appeals erred by concluding a) that a litigant may not assert a negligence claim against the attorney who represented that litigant's former adversary and b) that as to the wrongful use of civil proceedings claim, RLB did not plead facts regarding the improper purpose element sufficient to survive a motion to dismiss. We begin with the issues raised by RLB.

## ANALYSIS

CR 8.01 requires a complaint to have a short and plain statement of the claim showing that the pleader is entitled to relief. The purpose of the complaint is to give the defendant adequate notice of the claims and the factual grounds upon which they rest. *Cincinnati, Newport & Covington Transp. Co. v. Fischer*, 357 S.W.2d 870, 872 (Ky. 1962); *Nat. Res. & Envtl. Prot. Cabinet v. Williams*, 768 S.W.2d 47, 51 (Ky. 1989). "[T]he general rule of pleading [is] that facts and not conclusions should be pleaded, and that, if only the latter is contained in the pleading, it will not authorize the granting of relief, unless waived or cured . . . by some recognized method . . . ." *Begley v. Jones*, 37 S.W.2d 44, 45 (Ky. 1931); *see Rose v. Davis*, 157 S.W.2d 284, 284 (Ky. 1941).

In lieu of filing an answer, CR 12.02 allows a defendant to file a motion to dismiss the complaint for failure to state a claim upon which relief can be

8

granted. That motion admits as true the material facts of the complaint. *Upchurch v. Clinton Cnty.*, 330 S.W.2d 428, 429–30, 432 (Ky. 1959). If granted, the motion serves to expediently terminate litigation, however, when ruling on a motion to dismiss, the court's "attention . . . should be directed only to the sufficiency of the allegations in the complaint." *Ewell v. Central City*, 340 S.W.2d 479, 480 (Ky. 1960). A "complaint should not be dismissed unless it appears to a certainty that [the] plaintiff would not be entitled to relief under any statement of facts which could be proved in support of the claim." *Burkhart v. Community Med. Ctr.*, 432 S.W.2d 433, 434 (Ky. 1968). We review the trial court's dismissal, as a matter of law, de novo. *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010).

## I. The trial court properly dismissed RLB's wrongful use of civil proceedings claim because it failed to allege an improper purpose.

The trial court dismissed RLB's wrongful use of civil proceedings claim for failure to plead allegations sufficient to maintain a WUCP cause of action, specifically failure to plead an improper purpose. In its complaint, RLB alleged that Seiller Waterman acted with an improper purpose when it filed the third-party complaint in the underlying building repair dispute because the law firm intended to extort money from RLB by enriching itself through attorney fees and by enriching its clients, presumably through an improper damage recovery. We agree with the trial court and Court of Appeals that these particular improper purpose allegations were not sufficient to survive the motion to dismiss.

9

RLB's wrongful use of civil proceedings claim alleged:

> SW, Greenwell, and Hershberg knew or should have known the Claims set forth in the Verified Third-Party Complaint in the Lawsuit by Skyshield and/or Blanton were completely void of any factual basis and/or support and were not supported by law or any good faith argument for the extension of existing law. Indeed, said Defendants knew or should have known at the time they filed the Verified Third Party Complaint against RLB in the Lawsuit that not only did RLB not owe Skyshield and Blanton any monies, but that Skyshield and Blanton had received hundreds of thousands of dollars from RLB for labor and materials never rendered or furnished. In addition, during the litigation in the Lawsuit prior to the withdrawal as counsel by Defendants, Skyshield and Blanton admitted and acknowledged they did not render labor or perform services to the Marmaduke Building for RLB in excess of the amount of the money Skyshield had previously been paid by RLB.

> The filing of the Third Party Complaint against RLB was undertaken by SW, Greenwell and Hershberg for the improper and unlawful purpose of extorting money from RLB such that said Defendants could enrich themselves in the form of attorney fees, and enrich their clients, Blanton and Skyshield as well. . . . In addition, the conduct of said Defendants was malicious, oppressive and wanton and was designed to damage RLB . . . .

The purpose of a WUCP claim – or as it is sometimes referred to a malicious prosecution claim[9] – is to provide relief in cases in which a plaintiff brings a groundless suit *and* has an improper motive for bringing it. Simply put, a malicious prosecution or WUCP action protects "the interest in freedom from unjustifiable litigation." William L. Prosser, *The Law of Torts*, § 119, at 834 (4th ed. West 1971). However, to ensure that litigants with valid claims will not be deterred from bringing their claims to court for fear of a subsequent

---

[9] As explained more fully below, malicious prosecution has been used to describe claims subsequent to wrongful criminal and civil proceedings but the more precise terminology for cases such as this involving prior proceedings that are solely civil is that used by RLB, wrongful use of civil proceedings.

10

lawsuit, the remedy is not favored, and its requirements are strictly construed

against the malicious prosecution or WUCP plaintiff. *See Martin v. O'Daniel*,

507 S.W.3d 1, 7 (Ky. 2016).

As this Court recently stated with regard to a claim brought subsequent

to a dismissed criminal action:

> A malicious prosecution action may be established by showing
> that:
>
> 1) the defendant initiated, continued, or procured a criminal or
> civil judicial proceeding, or an administrative disciplinary
> proceeding against the plaintiff;
>
> 2) the defendant acted without probable cause;
>
> 3) the defendant acted with malice, which, in the criminal context,
> means seeking to achieve a purpose other than bringing an
> offender to justice; and *in the civil context, means seeking to
> achieve a purpose other than the proper adjudication of the claim
> upon which the underlying proceeding was based*;
>
> 4) the proceeding, except in ex parte civil actions, terminated in
> favor of the person against whom it was brought; and
>
> 5) the plaintiff suffered damages as a result of the proceeding.

*Id.* at 11–12 (emphasis added) (clarifying the elements of the cause of action as

discussed in *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981)).

*Raine* was a malicious prosecution case brought by two physicians

against two attorneys who had filed a baseless malpractice suit against them.

Addressing jury instructions that produced a verdict in favor of the plaintiff

physicians, this Court pronounced the elements of malicious prosecution for

use in both criminal and civil contexts. *Id.* A few years later the Court viewed

*Raine* as part of the developmental path of the tort flowing from wrongful use of

11

civil proceedings. *Prewitt v. Sexton*, 777 S.W.2d 891, 894-95 (Ky. 1989) (stating "[i]n *Raine* . . ., our Court referred to the *Restatement (Second) of Torts* as authority; in *Mapother & Mapother, P.S.C. v. Douglas*, [750 S.W.2d 430, 431 (Ky. 1988)], we adopted it as law on this subject[]").[10]

*Mapother* distinguished malicious prosecution claims based on prior criminal proceedings from the more appropriately named tort of "wrongful use of civil proceedings" invoked where the prior proceedings were solely civil. More importantly, the *Mapother* Court relied on the *Restatement (Second) of Torts*, Wrongful Use of Civil Proceedings, § 674 General Principle, § 675 Existence of Probable Cause, and § 676 Propriety of Purpose (1977) in outlining the WUCP tort. The "probable cause" and "improper purpose" principles set out in *Mapother* and subsequently expounded on in *Prewitt* are central to resolution of this case.

The *Restatement* sections relied upon by the *Mapother* Court remain unchanged. Pertinently, § 674 states that one is subject to liability to another for wrongful civil proceedings if "he acts without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based." Section 675 states that one has probable cause for initiating a civil proceeding "if he reasonably believes in the existence

---

[10] Although our expression of the elements makes no distinction, *see Raine*, 621 S.W.2d at 899, and *Martin*, 507 S.W.3d at 11–12, in both *Mapother*, 750 S.W.2d at 431, and *Prewitt*, 777 S.W.2d at 983-94, we noted a preference for "wrongful use of civil proceedings" as more accurate terminology to be used in cases such as this which do not involve prior criminal proceedings.

12

of the facts upon which the claim is based, and . . . correctly or reasonably

believes that under these facts the claim may be valid under the applicable

law." The "Propriety of Purpose" provision, § 676 reiterates: "To subject a

person to liability for wrongful civil proceedings, the proceedings must have

been initiated or continued primarily for a purpose other than that of securing

the proper adjudication of the claim on which they are based." 750 S.W.2d at

431.

With those general principles identified, we turn to the *Restatement*

*(Third) of the Law Governing Lawyers* § 57 Nonclient Claims—Certain Defenses

and Exceptions to Liability (2000), which states the rule regarding malicious

prosecution or wrongful use of civil proceedings as applied to lawyers:

> A lawyer representing a client in a civil proceeding or procuring the
> institution of criminal proceedings by a client is not liable to a
> nonclient for wrongful use of civil proceedings or for malicious
> prosecution if the lawyer has probable cause for acting, or if the
> lawyer acts primarily to help the client obtain a proper
> adjudication of the client's claim in that proceeding.

Both the *Restatement (Second) of Torts* and the *Restatement (Third) of the*

*Law Governing Lawyers* contain like commentary explaining the probable

cause and improper purpose elements as applied to attorneys, with both also

providing commentary stating that the collection of attorney fees is *not* an

improper purpose. The *Restatement (Second) of Torts* § 674 cmt. d (1977)

states:

> An attorney who initiates a civil proceeding on behalf of his client
> or one who takes any steps in the proceeding is not liable if he has
> probable cause for his action (see § 675); and even if he has no
> probable cause and is convinced that his client's claim is

13

unfounded, he is still not liable if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of his claim. (See § 676). An attorney is not required or expected to prejudge his client's claim, and although he is fully aware that its chances of success are comparatively slight, it is his responsibility to present it to the court for adjudication if his client so insists after he has explained to the client the nature of the chances.

*If, however, the attorney acts without probable cause for belief in the possibility that the claim will succeed, and for an improper purpose, as, for example, to put pressure upon the person proceeded against in order to compel payment of another claim of his own or solely to harass the person proceeded against by bringing a claim known to be invalid, he is subject to the same liability as any other person.* There is one situation that sometimes arises in civil proceedings but does not occur in criminal proceedings. An attorney who initiates civil proceedings on a contingent-fee basis with his client is not for that reason to be charged with an improper motive or purpose, since the contingent fee is a legitimate arrangement and the interest of the attorney in receiving it is merely the ordinary interest of a professional man in being paid for his services. But by obtaining the authority of the client to bring the action he procures its initiation; and if he does so without probable cause and for an improper purpose other than the fee, he is subject to liability under the rule stated in this Section. . . .

(Emphasis added.) *Accord Restatement (Third) of the Law Governing Lawyers* §

57 cmt. d (2000) (citing *Restatement (Second) of Torts* §§ 674, 675) (also stating,

"A desire to earn a contingent or other fee does not constitute an improper

motive."); *see also* cmt. g discussing attorney fees in the context of a lawyer

advising or assisting a client to break a contract ("So long as the lawyer acts or

advises with the purpose of promoting the client's welfare, it is immaterial that

the lawyer hopes that the action will increase the lawyer's fees or reputation as

a lawyer or takes satisfaction in the consequences to a nonclient.").

When addressing wrongful use of civil proceedings actions against

attorneys, we are mindful of an attorney's many responsibilities, including

14

promoting access to the legal system and administration of justice. *See* Ky. Supreme Court Rule (SCR) 3.130, Rules of Professional Conduct; *Hill v. Willmott*, 561 S.W.2d 331, 334 (Ky. App. 1978) (quoting *Norton v. Hines*, 123 Cal. Rptr. 237 (Cal. App. 1975)). Moreover, an attorney is required under our ethical and civil rules to avoid filing a suit for any improper purpose, such as to harass or to cause needless increase in the cost of litigation, and if the attorney does so in violation of the rules then sanctions may be imposed. SCR 3.130, CR 11. When balancing the attorney's role to assist with a client's access to courts and the impact of meritless lawsuits, the attorney's duty to loyally and zealously represent his client must outweigh an adversary's desire to avoid legal action. In short, we find no reason to disfavor an attorney incidentally earning fees while representing a client even if the client's cause cannot and ultimately does not prevail.

Thus, we agree with the philosophy represented in the *Restatement (Second) of Torts* and the *Restatement (Third) of the Law Governing Lawyers* that an attorney seeking to collect an attorney fee in the usual course of representing a client is not acting for an improper purpose, a necessary element of the wrongful use of civil proceedings claim. Even if the attorney acts without probable cause to believe the client's claim will succeed, the improper purpose which may subject an attorney to liability to a nonclient must be something other than simply earning a fee.[11] Here, then, RLB's

---

[11] Courts in other jurisdictions faced with similar WUCP claims against attorneys have adhered to this rule. *See, e.g., LoBiondo v. Schwartz*, 970 A. 2d 1007, 1033-37 (N.J. 2009) (outlining the circumstances in which an attorney may be liable

15

allegation that Seiller Waterman initiated the underlying lawsuit for Skyshield against RLB to earn fees may not be viewed as the statement of an improper purpose which satisfies the WUCP element. Furthermore, merely describing the law firm's earning of fees as "extorting" money – a verb freighted with criminal connotations – adds nothing because the allegation is still factually insufficient. Other factual allegations beyond the customary aspects of client representation, i.e., performing legal services for a fee, are necessary to support the improper purpose element; without those additional facts the claim stated is an inappropriate pleading of a legal conclusion upon which relief may not be granted. *Begley*, 37 S.W.2d at 45.

In response to these clear legal principles regarding improper purpose in the context of a WUCP claim against a former adversary's attorney, RLB argues that its improper purpose pleading also includes allegations that Seiller Waterman filed the lien without performing any background research and similarly filed a baseless, frivolous lawsuit. RLB's argument is apparently based on the premise that the same evidence which establishes lack of probable cause may support a reasonable inference that a party or his attorney acted for a primary purpose other than securing an adjudication of the party's

_____

for malicious use of process and explaining that an attorney's improper purpose must be something other than the motivation to earn a fee); *Nave v. Newman*, 140 A. 3d 450, 456 (D.C. 2016) (explaining that only in rare circumstances will a party be justified in suing his opponent's lawyer and providing that as long as the lawyer acts with the purpose of promoting the client's welfare, it is immaterial that the lawyer hopes the action will increase the lawyer's fees).

16

claims when filing and pursuing the underlying action. This confluence of two separate elements of a WUCP claim is legally incorrect.

RLB essentially posits that the *inference of an improper purpose* based on its lack of probable cause allegation and the *direct improper purpose allegation* as to Seiller Waterman's earning legal fees combine to provide adequate support for the improper purpose element of its WUCP claim. Having already decided that RLB's allegation that Seiller Waterman initiated the underlying action to earn legal fees is insufficient to support the improper purpose element, we consider whether an inference of an improper purpose arising from a lack of probable cause allegation is sufficient for the WUCP claim to survive the motion to dismiss.

In a traditional malicious prosecution action, the premise that malice may be inferred from lack of probable cause has been part of our jurisprudence for over a century. For example, *Wood v. Weir*, 44 Ky. 544, 546 (1845), a civil malicious prosecution case against an attorney, states that "[m]alice may be implied from the want of probable cause, but this implication may be explained and repelled by facts and circumstances indicating a fair and legitimate purpose, and honest pursuit of a claim believed to be just." *Mosier v. McFarland* provides a more complete expression of the rule:

> In an action for malicious prosecution, both malice on the part of the defendant and want of probable cause for his prosecution of the plaintiff must be alleged and proved, although malice may be inferred from proof of the absence of probable cause. The jury, however, may not invariably imply malice from the mere want of probable cause if all the facts disclosed lead to a different conclusion. If malice was to be inferred from want of

17

probable cause alone, then there would be no necessity for having a distinct requirement that malice be proven, for want of probable cause would then be the only element necessary to be established.

106 S.W.2d 641, 642 (Ky. 1937) (internal citations omitted).

Thus, in a malicious prosecution or WUCP action, lack of probable cause alone cannot support a legally sufficient inference that the attorney acted with an improper purpose. Independent evidence of malice is required. In this instance, because the earning of attorney fees may not be considered independent evidence of an improper purpose, any inference of malice from RLB's lack of probable cause allegations is not sufficient to support the WUCP improper purpose element.[12]

RLB also argues before this Court that the source of payment from which Seiller Waterman sought attorney fees is a distinguishing factor in the WUCP analysis. Specifically, RLB emphasizes that the law firm demanded in the third-party complaint filed on behalf of Skyshield/Blanton that its attorney fees be paid by RLB. We find the argument unpersuasive. First, RLB did not make that "source of payment" allegation within the statement of the WUCP claim in its complaint. Second, even if Seiller Waterman's demand for attorney fees from RLB were part of the factual allegations within RLB's complaint, a source of payment other than the law firm's client does not change the underlying premise that an attorney seeking payment for professional services rendered is

_____

[12] Indeed, after reviewing the allegations in this case the trial court, citing *Prewitt*, 777 S.W.2d at 894, expressly noted that "improper purpose will not be inferred from lack of probable cause."

18

not acting with an improper purpose. Indeed, RLB itself references its judgment for recovery of attorney fees from Skyshield and Blanton in the underlying action, noting that "Quite often, opposing attorneys recover and are the beneficiary of attorney fees from the opposing party."

Finally, the preceding analysis also disposes of RLB's allegation that Seiller Waterman improperly sought to extort money to enrich its clients. Without any factual allegations showing how Seiller Waterman sought to "extort" money beyond the filing of the claim seeking damages (an ordinary part of securing a proper adjudication of a claim), RLB's allegation is not sufficient. *Begley*, 37 S.W.2d at 45. Again, although RLB seeks to use the allegation that Seiller Waterman filed a fraudulent lien to support its extortion claim, this allegation, assuming it may support the inference of lack of probable cause in filing the third-party complaint, cannot support the improper purpose element. As explained *supra*, without a proper independent allegation of an improper purpose, any improper purpose which may be inferred from a lack of probable cause is not sufficient to maintain the malicious prosecution claim.

In summary, neither the desire to earn attorney fees nor the filing of a claim seeking damages on behalf of a client constitutes an improper purpose sufficient to sustain a WUCP action against an attorney who represented a former adversary. Additionally, the record in this case contains no factual allegations to support the claim that Seiller Waterman was "extorting money" in some fashion beyond filing what was eventually established as a meritless claim against RLB. Under these circumstances, the trial court properly

19

concluded that RLB's complaint did not allege any facts, which when taken as true under our CR 12.02 standard, would be sufficient to establish the improper purpose element of a wrongful use of civil proceedings claim. Consequently, the trial court did not err when it dismissed RLB's WUCP claim for failure to state a claim upon which relief can be granted, and the Court of Appeals properly affirmed on that issue.

## II. The trial court properly dismissed the negligence claim because Seiller Waterman did not owe RLB a duty.

The trial court dismissed RLB's negligence claim against Seiller Waterman because RLB was not a client of the firm and was not an intended third-party beneficiary of its legal work. As a matter of law, a party such as RLB is not entitled to assert a negligence claim against the legal counsel who represented an opposing party in prior litigation, because no duty flows from that counsel to their client's adversary. Thus, RLB's negligence claim against Seiller Waterman, former counsel for Skyshield and Blanton, clearly failed to state a claim upon which relief could be granted.

In the negligence count of its complaint, RLB alleged that Seiller Waterman "owed certain duties to Skyshield and Blanton which by operation of law, extend to RLB, to act in a reasonably prudent manner with regard to their conduct and actions." Before the trial court, Seiller Waterman cited *Hill v. Willmott*, 561 S.W.2d 331, in support of its argument that RLB's negligence

20

claim must be dismissed because any duty owed to Seiller Waterman's clients did not extend to others and certainly not to their clients' adversary. We agree.

In *Hill*, a medical doctor brought suit alleging that Willmott, opposing counsel in an underlying malpractice action, failed to investigate the facts and law prior to filing suit, *id.* at 335, and thereby violated his duty under the then-Rules of Appellate Procedure to avoid the appearance of professional impropriety, *id.* at 333. The *Hill* Court explained that the violation of the duty set forth in the Rules – which embodied the principles enunciated in the American Bar Association's Code of Professional Responsibilities and established the minimum level of competence for the protection of the public – does not necessarily give rise to a cause of action. *Id.* at 333-34. Assuming an attorney owes a duty independent of that set forth in the Rules and Code, the *Hill* Court considered to whom that duty is owed and concluded: "An attorney may be liable for damage caused by his negligence to a *person intended to be benefited by his performance* irrespective of any lack of privity . . . ." *Id.* at 334 (quoting *Donald v. Garry*, 97 Cal. Rptr. 191, 192 (Cal. App. 1971); emphasis added). Needless to say, an adverse party in a lawsuit is not the intended beneficiary of the work an attorney performs on behalf of his or her own client. As the *Hill* Court properly concluded, an adverse party's action against an attorney for negligence (or malpractice) in improperly initiating suit is limited to one for malicious prosecution or wrongful use of civil proceedings. *Id.* at 334-35 (citing *Norton*, 123 Cal. Rptr. 237; *Rose v. Davis*, 157 S.W.2d 284 (Ky. 1941)). Otherwise, "allow[ing] a party to bring a negligence action against the

21

adverse attorney would have a chilling effect on the number of meritorious claims filed and this cannot be tolerated under our system." *Id.* at 335.

RLB argues that whether a nonclient may sue prior opposing counsel is unclear in our caselaw and cites *Hill* as standing for the proposition that under the facts of this case Seiller Waterman could be held liable to RLB for negligence. RLB emphasizes the portion of *Hill* quoting *Rose*, 157 S.W.2d 284:

> *An attorney is not ordinarily liable to third persons for his acts committed in representing a client. It is only where his acts are fraudulent or tortious and result in injury to third persons that he is liable.* To hold an attorney responsible for damages occasioned by an erroneous judicial order, even though the error be induced by him, would make the practice of law one of such financial hazard that few men would care to incur the risk of its practice.

*Hill,* 561 S.W.2d at 334–35.

We must disagree with RLB. While the quoted language viewed in isolation suggests that our predecessor Court did not limit nonclient suits against attorneys to malicious prosecution or WUCP actions, a full reading of the case dispels that notion. Furthermore, this Court noted in *Mapother* that *Rose* and *Hill* (and *Raine* for that matter) are cases in which this Court and the Court of Appeals have held that "ordinary elements of negligence do not apply in cases involving suits by opposing litigants or non-parties against the attorney in that suit." 750 S.W.2d at 431. Upon review, we reiterate this time-honored rule.

Although urged by RLB to adopt a rule allowing nonclient negligence actions, we remain convinced that the existing approach is necessary to maintain free access to our courts. *See Hill,* 561 S.W.2d at 334-35 (explaining

22

the public policy reasons for disallowing negligence actions against attorneys by a prior adversary). Because Kentucky law does not recognize a negligence action against the attorney for a prior adversary in litigation, the trial court properly dismissed RLB's negligence claim against Seiller Waterman. Accordingly, we affirm the Court of Appeals on this issue as well.

### III. The trial court properly dismissed RLB's slander of title, civil conspiracy, and filing an illegal lien claims as time barred.

The trial court dismissed three of RLB's claims – the KRS 434.155 illegal lien claim, the slander of title claim, and the dependent civil conspiracy claim[13] – as being time barred by KRS 413.245, the statute of limitations applicable to actions arising from the rendering of professional services. The Court of Appeals reversed, holding that it would be unconscionable for an attorney to escape slander of title liability under the one-year limitation in KRS 413.245 through the pretense of providing professional services if indeed a materialman's and mechanic's lien were filed for some malicious purpose. In that court's view, a slander of title claim is then outside the scope of negligent performance of professional services, rendering KRS 413.245 inapplicable. Because RLB's slander of title claim against Gordon Rose and Seiller Waterman alleged that the lien was filed without a factual basis and done maliciously to damage RLB, and the claim was dismissed through a motion for judgment on the pleadings, the Court of Appeals reversed the trial court and remanded for discovery on the claim. Employing the same reasoning, the Court of Appeals

---

[13] RLB does not argue that the civil conspiracy is an independent claim.

concluded RLB's KRS 434.155(1) wrongful lien and civil conspiracy claims, which also contained allegations that Seiller Waterman and its attorneys acted maliciously, were not time barred.

On discretionary review to this Court, Seiller Waterman argues that allegations of malice do not remove a claim from the reach of KRS 413.245. RLB continues to insist that the one-year statute of limitations in KRS 413.245 cannot bar its slander of title claim because Seiller Waterman did not render professional services either directly to or for the intended benefit of RLB. Agreeing with the trial court's analysis regarding the applicable statute of limitations, we reverse the Court of Appeals on this point.

KRS 413.245 states in full:

> Notwithstanding any other prescribed limitation of actions which might otherwise appear applicable, except those provided in KRS 413.140, a civil action, whether brought in tort or contract, arising out of any act or omission in rendering, or failing to render, professional services for others shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured. Time shall not commence against a party under legal disability until removal of the disability.

"Professional services" are defined as "any service rendered in a profession required to be licensed, administered and regulated as professions in the Commonwealth of Kentucky, except those professions governed by KRS 413.140." KRS 413.243. Indisputably, the practice of law is such a profession whose members' services are covered by KRS 413.245. *Abel v. Austin*, 411 S.W.3d 728, 737 (Ky. 2013).

24

To address whether allegations that professional services were rendered with malice would remove a claim against an attorney from the scope of KRS 413.245, we turn to principles of statutory construction.

> In construing statutes, our goal, of course, is to give effect to the intent of the General Assembly. We derive that intent, if at all possible, from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration. We presume that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes. We also presume that the General Assembly did not intend an absurd statute or an unconstitutional one. Only if the statute is ambiguous or otherwise frustrates a plain reading, do we resort to extrinsic aids such as the statute's legislative history; the canons of construction; or, especially in the case of model or uniform statutes, interpretations by other courts.

*Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011) (internal citations omitted).

KRS 413.245, when read in conjunction with KRS 413.243 which makes clear the referenced professional services include the practice of law, is unambiguous. Pertinently, whether brought in tort or contract, a civil action commenced against an attorney arising out of *any* act or omission in rendering, or failing to render, professional services for others must be brought within one year. The parties in this case do not dispute that Seiller Waterman was practicing law when the attorneys at that law firm prepared and filed the mechanic's lien, the action on which RLB premises its claims that Seiller Waterman slandered its title, engaged in a conspiracy with Skyshield, and violated the illegal lien provisions of KRS 434.155. The Court of Appeals nevertheless determined that RLB's claims did not actually arise out of

25

professional services performed by Seiller Waterman if those otherwise professional services were performed with malice.[14]

The Court of Appeals' conclusion that KRS 413.245 is limited to claims free from malice cannot be discerned from the plain language expressed in the statute. The statute does not refer to malice or contain any language from which the presence or absence of malice might be inferred as relevant to the statute's applicability. Without language restricting the application of KRS 413.245 to claims not involving malice, the plain language of the statute directs that the one-year limitation applies to *any* claim against an attorney arising out of any act or omission in rendering or failing to render professional services. Obviously, the legislature was free to include a malice exception or other limiting language, but it did not do so. A court may not "add or subtract from the legislative enactment nor discover meaning not reasonably ascertainable from the language used." *Beckham v. Board of Educ.*, 873 S.W.2d 575, 577 (Ky. 1994). Under these time-honored statutory construction principles, we must reject the interpretation of KRS 413.245 adopted by the Court of Appeals. Regardless of whether malice is alleged, claims arising from

---

[14] Like the Court of Appeals, RLB does not cite authority, within Kentucky or from other jurisdictions, for the proposition that alleging an attorney, or any other professional, acted with malice removes a claim from the ambit of the statute of limitations applicable to all claims arising from professional services. If the mere addition of "with malice" or "maliciously" could avoid the one-year statutory limitations period adopted by our General Assembly, use of that language would likely become a routine end-run around the statute at least at the pleadings stage in all actions against professionals whose services are encompassed by KRS 413.245.

26

an act or omission in the rendering of, or failing to render, professional services are governed by KRS 413.245 and must be brought within one year.

Alternatively, RLB contends that its slander of title claim is governed by the five-year statute of limitations in KRS 413.120, citing *Ballard v. 1400 Willow Counsel of Co-Owners, Inc.*, 430 S.W.3d 229, 236 (Ky. 2013). *Ballard* states, "Although not specifically mentioned, slander of title claims are governed by KRS 413.120(7), which applies to '[a]n action for an injury to the rights of the plaintiff, not arising on contract and not otherwise enumerated.'" *Id.* Seiller Waterman counters that when a slander of title claim is asserted against attorneys and their law firm the controlling precedent is actually *Abel v. Austin.*

In *Abel*, numerous clients brought an action against their former attorneys alleging fraud, misrepresentation, and breach of fiduciary duty when the clients did not receive funds from a settlement. 411 S.W.3d at 730. The attorneys argued that the one-year limitation in KRS 413.245 applied to the claims, rather than the general five-year limitation in KRS 413.120. *Id.* at 737. Along with the statutory principles outlined above, the *Abel* Court was guided by two other principles:

> "The applicable rule of statutory construction where there is both a specific statute and a general statute seemingly applicable to the same subject is that the specific statute controls." *Parts Depot, Inc. v. Beiswenger*, 170 S.W.3d 354, 361 (Ky. 2005) (quoting *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814, 819 (Ky. 1992)). Additionally, where an apparent conflict in statutes exists, the "later statute is given effect over an earlier statute." *Bowling v. Kentucky Dep't of Corr.*, 301 S.W.3d 478, 491 (Ky. 2009) (quoting [*Troxell v. Trammell*, 730 S.W.2d 525, 528 (Ky. 1987)]).

*Id.* at 738 (footnote omitted).

The *Abel* Court concluded that KRS 413.245 applied to the clients' claims because it "relates exclusively to civil actions brought against providers of professional services, such as attorneys, for injury arising out of that service," and is thus more specific (and more recently enacted) than KRS 413.120(7) or (12). *Id.* The Court ended the analysis with its contextual conclusion: "We are compelled by our analysis to conclude that claims brought by clients or former clients against attorneys for acts or omissions arising out of the rendition of professional services are governed exclusively by the one-year limitation periods established by KRS 413.245. The provisions of KRS 413.120 are not applicable." *Id.* at 739. Citing this statement's reference to "claims brought by clients and former clients," RLB contends that KRS 413.245 does not extend to claims brought against attorneys by nonclients. We must disagree.

By its plain, unambiguous language, KRS 413.245 applies to civil actions arising out of any act or omission in rendering or failing to render professional services. Nothing in the statute limits its application to only those claims brought by individuals or entities who engaged the professional to provide such services. KRS 413.245 thus applies to *any* civil action against an attorney arising out of any act or omission in rendering or failing to render professional services without regard to the identity of the claimant. The trial court properly concluded that a slander of title claim brought against Seiller Waterman by

28

nonclient RLB was time barred by KRS 413.245 after one year, and thus relief could not be granted.

## CONCLUSION

For the foregoing reasons, we affirm in part and reverse in part the Court of Appeals' Opinion rendered in this case and thereby reinstate the Opinion and Order of the Jefferson Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANTS/CROSS-APPELLEES:

James Patrick Grohmann
O'BRYAN, BROWN & TONER, PLLC

COUNSEL FOR APPELLEE/CROSS-APPELLANT:

David Bradley Mour
LAW OFFICE OF DAVID B. MOUR

COUNSEL FOR AMICUS CURIAE,
KENTUCKY DEFENSE COUNSEL, INC.:

David W. Kramer
DRESSMAN, BENZINGER & LAVELLE PSC

Darrin W. Banks
PORTER, BANKS, BALDWIN & SHAW, PLLC

# Supreme Court of Kentucky

## 2018-SC-0538-DG
## 2018-SC-0558-DG

SEILLER WATERMAN, LLC; PAMELA M.     APPELLANTS\CROSS-APPELLEES
GREENWELL; GORDON C. ROSE; AND,
ALSO PAUL J. HERSHBERG

ON REVIEW FROM COURT OF APPEALS
CASE NO-2017-CA-0024-MR

V.        JEFFERSON CIRCUIT COURT NO.16-CI-002522

RLB PROPERTIES, LTD.        APPELLEES/CROSS-APPELLANTS

## ORDER DENYING PETITION FOR REHEARING

The Petition for Rehearing, filed by Appellant, RLB Properties, LTD of the

Opinion of the Court, rendered July 9th, 2020 is DENIED.

All sitting. All concur.

ENTERED: September 24, 2020.

_____
CHIEF JUSTICE